1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER LINDSAY,

11          Plaintiff,              No. 2:10-cv-02842 LKK KJN PS

12      v.

13   YOLANDA FRYSON, individually and
     in official capacity as Social Worker;
14   YUBA COUNTY CHILD PROTECTIVE
     SERVICES,

15
          Defendants.              ORDER &
16                                 FINDINGS AND RECOMMENDATIONS

17   _____/

18          Presently before the court[1] are defendant County of Yuba's (the "County") motion

19   to dismiss plaintiff's claims against it, motion for a more definite statement, and motion to strike

20   plaintiff's request for punitive damages filed pursuant to Federal Rules of Civil

21   Procedure 12(b)(6), 12(e), and 12(f), respectively (Dkt. No. 13).[2]  The court heard the County's

22   motion on its law and motion calendar on June 9, 2011.  Attorney Clayton T. Cook appeared on

23   _____

24          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

25
            [2]  The other defendant named in this action is Yolanda Fryson.  On November 19, 2010,
26   Fryson filed an answer on a California Judicial Council Form.  (Fryson's Answer, Dkt. No. 5.)

1

behalf of the County.  Defendant Yolanda Fryson, who is incarcerated, did not appear or request an opportunity to appear.[3]  Plaintiff, who is proceeding without counsel, appeared on his own behalf.

The undersigned has considered the briefs, oral arguments, and the appropriate portions of the record in this case and, for the reasons stated below, recommends that the County's motion to dismiss be granted in part and denied in part.[4]  The undersigned overrules the County's evidentiary objection to an exhibit filed by plaintiff with his written opposition. Finally, the undersigned recommends that the County's motion to strike plaintiff's prayer for punitive damages be denied.

I.      BACKGROUND

Plaintiff's complaint alleges claims against: (1) Yolanda Fryson, who is alleged to be have been a social worker employed by Yuba County Child Protective Services ("Yuba CPS") at all times material to plaintiff's claims; and (2) Yuba CPS.  (See Compl. ¶¶ 4-5, 12-13) Plaintiff's claims arise from an alleged, failed blackmail scheme perpetrated by Fryson against plaintiff in September and October of 2008.  (See id. ¶¶ 19-23.)

Plaintiff alleges that Fryson contacted him and told him that she "had information that a claim was filed and that Plaintiff was being accused of sexual molestation of a minor, sexual relations with a 17 year old girl and physical abuse of Plaintiff's girlfriend."  (Compl. ¶ 20.)  Plaintiff further alleges that Fryson told him that she could "make the charges 'go away'" in exchange for a payment of $10,000.  (Id. ¶ 21.)  Fryson allegedly "showed her Yuba County badge" to plaintiff during Fryson's initial meeting with plaintiff.  (Id.)

Plaintiff alleges that he was forced to retain legal counsel to defend against the

---

[3]  On April 1, 2011, Fryson filed a response to an order to show cause, which represents that Fryson is presently serving a prison sentence of nine years and four months.  (Dkt. No. 11.)

[4]  Because the undersigned recommends that plaintiff be granted leave to amend his complaint in most respects, the County's motion for a more definite statement is denied.

1  purported charges of molestation and abuse and any criminal matters that might arise therefrom.

2  (See Compl. ¶ 22.)  Plaintiff alleges that after speaking with his attorney, he contacted the Placer

3  County Sheriff's Department, and that the Placer County Sheriff's Department "assisted the

4  Plaintiff in watching the bribe being taken and bugged the phone calls made from [Fryson]."  (Id.

5  ¶ 23.)  Plaintiff appears to allege, in essence, that law enforcement personnel assisted him in

6  setting up a "sting operation" to catch Fryson accepting a bribe.[5]

7          Plaintiff claims that he was damaged by these events in several respects.  He

8  alleges that he was forced to "put up a $5,000 retainer for an attorney for the quick advise [*sic*]

9  and direction for the ordeal that [he] was going through."  (Compl. ¶ 24.)  He further alleges that

10  he "could not go home or to his office until he was able to prove that the allegations and claims

11  made of him sexually molesting a minor was [*sic*] fraudulent."  (Id.)  He also alleges that he

12  suffered mental effects of the ordeal including high anxiety, depression, sleep loss, heavy

13  drinking, mood swings toward loved ones, loss of interest in everything he was doing, and

14  suicidal thoughts.  (See id. ¶ 25-28.)

15          Plaintiff alleges that he "submitted a timely claim under the government tort

16  claims act on or about February 4, 2009, to defendant Public Entity."  (Compl. ¶ 1.)  Plaintiff

17  subsequently filed his complaint on October 21, 2010.

18          Plaintiff's complaint alleges the following six claims for relief against Yuba CPS:

19  (1) violation of plaintiff's due process rights provided by the Fourth, Fifth and Fourteenth

20  Amendments to the United States Constitution (Compl. ¶¶ 30-37); (2) violation of plaintiff's

21  rights of equal protection provided by the Fourteenth Amendment (id. ¶¶ 38-46); (3) negligent

22  ////

23  ////

24

25  [5]  Fryson's answer alleges that plaintiff "worked with detectives to set up a sting
26  operation" against Fryson.  (Fryson's Answer at 2.)  However, Fryson asserts that the goal of the
    "sting operation" was to entrap her into accepting money offered to her by plaintiff.  (See id.)

1   supervision, hiring, and retention (id. ¶¶ 47-59); (4) fraud[6] (id. ¶¶ 76-81); (5) negligent infliction

2   of emotional distress (id. ¶¶ 71-75); and (6) violation of the Tom Bane Civil Rights Act ("Bane

3   Act"), Cal. Civ. Code § 52.1 (id. ¶¶ 82-90).[7]  Plaintiff further alleges that Yuba CPS is

4   responsible or liable for the acts of its employees committed during the course and scope of their

5   employment pursuant to Government Code Section 815.2.  (See id. ¶¶ 5-6.)  Plaintiff seeks

6   compensatory damages, punitive damages, attorney's fees and costs, and civil penalties.  (See id.

7   at p. 14.)

8            On April 15, 2011, the County filed the pending motions.[8]  Plaintiff filed a timely

9   written opposition ("Pl.'s. Opp'n"), which appends exhibits and a declaration of his attorney,

10  who does not appear to represent plaintiff in this action.  The County filed a reply and an

11  objection to one piece of evidence submitted by plaintiff; the objection is addressed below.

12  II.    LEGAL STANDARDS

13        A.    Motions To Dismiss For Failure To State A Claim, Fed. R. Civ. P. 12(b)(6)

14            A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

15  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

16  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

17  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

18

19      [6]  Plaintiff's fourth claim for relief, alleging fraud, appears out of sequential order in the
complaint and follows plaintiff's fifth and sixth claims for relief.

20      [7]  Plaintiff's also alleges his Section 1983 claims and his state law claims for negligent
supervision, hiring, and retention, fraud, negligent infliction of emotional distress, and violation
21  of the Bane Act against Fryson.  Plaintiff's fifth claim for relief alleges a claim intentional
infliction of emotional distress, but only against Fryson.  (Compl. ¶¶ 60-70.)

22

23      [8]  On March 17, 2011, the undersigned conducted a status (pretrial scheduling)
conference, but the County had not yet appeared in this action.  (See Order & Order to Show
24  Cause, Mar. 18, 2011, Dkt. No. 10.)  At the scheduling conference, plaintiff represented that he
had properly served Yuba CPS.  (Id. at 2.)  On February 18, 2011, plaintiff had filed a proof of
25  service form indicating service of the complaint and summons on the County that same day.
(Proof of Personal Service, Dkt. No. 8.)  Although plaintiff potentially could have sought a
26  clerk's entry of default against the County, plaintiff elected to re-serve the County at an alternate
address.  (See Order, Mar. 18, 2011, at 2-3.)

1    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

2    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

3    (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

4    allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

5    face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v.

6    Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads

7    factual content that allows the court to draw the reasonable inference that the defendant is liable

8    for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812

9    (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in

10    the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v.

11    Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as

12    true conclusory allegations that are contradicted by documents referred to in the complaint, and

13    [the court does] not necessarily assume the truth of legal conclusions merely because they are

14    cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

15    omitted).  The court must construe a pro se pleading liberally to determine if it states a claim and,

16    prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

17    to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

18    Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

19    Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

20    particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

21    & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

22    evaluating them under Iqbal.).

23         In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

24    generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

25    and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

26    Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

1   the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

2   determine the propriety of a Rule 12(b)(6) motion, see, e.g., Schneider v. Cal. Dep't of Corr., 151

3   F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in

4   deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

5   (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be

6   considered by the court in determining whether to grant leave to amend or to dismiss the

7   complaint with or without prejudice.") (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co.,

8   268 F.3d 1133, 1137-38 (9th Cir. 2001))); see also Simmonds v. Credit Suisse Sec. (USA) LLC,

9   638 F.3d 1072, 1091 (9th Cir. 2011) (considering letters submitted with an opposition to a

10   motion to dismiss in deciding to dismiss several complaints with prejudice).

11          B.      Motion to Strike, Fed. R. Civ. P. 12(f)

12                  Federal Rule of Civil Procedure 12(f) provides that a district court "may strike

13   from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

14   matter."  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

15   money that must arise from litigating spurious issues." Sidney-Vinstein v. A.H. Robins Co., 697

16   F.2d 880, 885 (9th Cir. 1983); see also Amaral v. Wachovia Mortgage Corp., 692 F. Supp. 2d

17   1226, 1230 (E.D. Cal. 2010).  Motions to strike are generally disfavored, and this court has

18   previously stated that a motion to strike brought pursuant to Rule 12(f) "should not be granted

19   unless it is clear that the matter to be stricken could have no possible bearing on the subject

20   matter of the litigation." Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005)

21   (citation and quotation marks omitted); see also Ollier v. Sweetwater Union High Sch. Dist., 735

22   F. Supp. 2d 1222, 1223-24 (S.D. Cal. 2010); Osei v. Countrywide Home Loans, 692 F. Supp. 2d

23   1240, 1255 (E.D. Cal. 2010); Wolk v. Green, 516 F. Supp. 2d 1121, 1134 (N.D. Cal. 2007).

24   ////

25   ////

26   ////

6

1    III.    DISCUSSION

2         A.    Plaintiff's Section 1983 Claims Are Subject to Dismissal

3              Plaintiff's complaint pleads two claims pursuant to 42 U.S.C. § 1983, both of

4    which allege violations of plaintiff's constitutional rights.  Plaintiff's first claim for relief alleges

5    violations of plaintiff's due process rights.  His second claim for relief alleges a violation of his

6    equal protection rights.  The County moves to dismiss both claims, and each claim is addressed

7    in turn below.

8              Plaintiff's claims of violations of his constitutional rights are permissibly brought

9    pursuant to 42 U.S.C. § 1983, which provides in relevant part:

10             Every person who, under color of any statute, ordinance, regulation,
              custom, or usage, of any State . . . , subjects, or causes to be subjected, any
11            citizen of the United States or other person within the jurisdiction thereof
              to the deprivation of any rights, privileges, or immunities secured by the
12            Constitution and laws, shall be liable to the party injured in an action at
              law, suit in equity, or other proper proceeding for redress . . . .
13

14             Generally, with respect to individual defendants, "Section 1983 imposes civil

15   liability upon an individual who under color of state law subjects or causes, any citizen of the

16   United States to the deprivation of any rights, privileges or immunities secured by the

17   Constitution and laws."  Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C.

18   § 1983).  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

19   right secured by the Constitution or laws of the United States was violated, and (2) that the

20   alleged violation was committed by a person acting under the color of State law."  Long v.

21   County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

22   (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) ("To make

23   out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting

24   under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

25   statutes" (citation omitted).).

26             A municipality may also be held liable for civil rights violations under Section

7

1983, but the standards governing the liability of a municipality materially differ from those that govern the liability of individuals who acted under color of state law.  Relevant here, in <u>Monell v. Department of Social Services</u>, 436 U.S. 658, the Supreme Court limited municipal liability and held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Id.</u> at 691.  Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  <u>Id.</u> at 690 (footnote omitted).  The Court further stated that "it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Id.</u> at 693; <u>see also</u> <u>Bd. of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

   The Ninth Circuit Court of Appeals has held that in order to establish municipal liability, "the plaintiff must establish: (1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation."  <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification in original); <u>see also</u> <u>Levine v. City of Alameda</u>, 525 F.3d 903, 907 (9th Cir. 2008) ("To establish [municipal] liability, a plaintiff must establish that he was deprived of a constitutional right and that the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional right and was the 'moving force' behind the constitutional violation.") (citing <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996)).  With respect to the last element, "[t]here must

1  be a direct causal link between a municipal policy or custom and the alleged constitutional

2  deprivation."  Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en

3  banc) (citation and quotation marks omitted).  The Court of Appeals has recognized that in

4  addition to showing that a constitutional violation resulted from an express municipal policy or

5  custom, "[a] plaintiff may also establish municipal liability by demonstrating that (1) the

6  constitutional tort was the result of a longstanding practice or custom which constitutes the

7  standard operating procedure of the local government entity; (2) the tortfeasor was an official

8  whose acts fairly represent official policy such that the challenged action constituted official

9  policy; or (3) an official with final policy-making authority delegated that authority to, or ratified

10 the decision of, a subordinate."  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (citation and

11 quotation marks omitted).

12           1.      Plaintiff's Due Process Claim (Claim 1)

13           Plaintiff's first claim for relief, alleged against the County and Fryson, alleges that

14 "Defendants, and each of them, violated Plaintiff's fundamental constitutional rights to due

15 process of law under, inter alia, the Fourth, Fifth and Fourteenth Amendments to the United

16 States Constitution."  (Compl. ¶ 31.)  The County moves to dismiss this claim on several grounds

17 that relate to the nature or scope of the constitutional rights alleged to be at issue.  Those

18 arguments are addressed in this subsection, and the County's Monell-specific arguments are

19 addressed further below.

20           First, the County argues that it "is unable to determine what due process violation

21 Plaintiff is alleging under the Fourth Amendment because [plaintiff] has not alleged any facts

22 indicative of an unlawful search or seizure by [the County]."  (County's Memo. of P. & A. In

23 Supp. of Mot. to Dismiss & Mot. to Strike ("County's Memo.") at 4.)  The County's argument is

24 well-taken.  The Fourth Amendment to the U.S. Constitution provides:

25           The right of the people to be secure in their persons, houses, papers, and
             effects, against unreasonable searches and seizures, shall not be violated,
26           and no Warrants shall issue, but upon probable cause, supported by Oath

9

1  or affirmation, and particularly describing the place to be searched, and the
2  persons or things to be seized.

3  It is entirely unclear from plaintiff's complaint what specific acts or omissions by the County

4  allegedly led to a "due process" violation under the Fourth Amendment.  In short, there is no

5  factual basis in plaintiff's complaint, that would support a claimed violation of plaintiff's Fourth

6  Amendment rights.  Even assuming the Fourth Amendment contains some due process

7  component, plaintiff does not allege that he was unlawfully seized or searched by any agent of

8  the County at any point during the relevant period.  Accordingly, the undersigned recommends

9  that plaintiff's first claim for relief be dismissed with prejudice to the extent that it is premised on

10  a Fourth Amendment violation.

11  Second, the County argues that plaintiff's due process claim fails as a matter of

12  law to the extent that it is premised on a violation of plaintiff's due process rights under the Fifth

13  Amendment because the Fifth Amendment pertains only to federal actors.  (See County's Memo.

14  at 4.)  Again, the County's argument is well-taken.  The Ninth Circuit Court of Appeals has

15  plainly held that "[t]he Due Process Clause of the Fifth Amendment . . . [applies] only to actions

16  of the federal government—not to those of state or local governments." Lee v. City of L.A., 250

17  F.3d 668, 687 (9th Cir. 2001); see also Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008)

18  ("The Fifth Amendment's due process clause only applies to the federal government."); Castillo

19  v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the

20  federal government from depriving persons of due process, while the Fourteenth Amendment

21  explicitly prohibits deprivations without due process by the several States.").  Plaintiff's claims

22  are only against a county and an employee of that county, and plaintiff does not allege that

23  Fryson or the County are federal actors.  Accordingly, the undersigned recommends that

24  plaintiff's first claim for relief be dismissed with prejudice to the extent that it is premised on an

25  alleged violation of plaintiff's Fifth Amendment rights.

26  Third, the County contends that plaintiff's first claim for relief is also subject to

10

1   dismissal to the extent that this claim is premised on plaintiff's due process rights under the

2   Fourteenth Amendment because plaintiff "does not identify whether he is asserting procedural or

3   substantive due process violations against the County." (County's Memo. at 4 (emphasis

4   omitted).)  The County further contends, without much explanation, that "[r]egardless, the

5   Complaint provides no facts in support of either contention." (Id.)  Although the County's

6   argument is persuasive to a point, the undersigned recommends that plaintiff's first claim for

7   relief be dismissed with leave to amend.  The undersigned recommends that plaintiff be

8   permitted to amend his complaint to more clearly allege: (1) whether plaintiff's Fourteenth

9   Amendment due process claim is premised on an alleged violation of plaintiff's procedural due

10  process rights, his substantive due process rights, or both; and (2) precise facts that substantiate a

11  plausible claim or claims and put the County on notice of the claims and conduct at issue.

12          In recommending that plaintiff be granted leave to amend, the undersigned briefly

13  addresses the basic showing that must be made insofar as alleged violations of due process under

14  the Fourteenth Amendment are concerned.  First, "[a] procedural due process claim has two

15  elements: deprivation of a constitutionally protected liberty or property interest and denial of

16  adequate procedural protection."  Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher

17  Educ., 616 F.3d 963, 970 (9th Cir. 2010) (citing Brewster v. Bd. of Educ. of the Lynwood

18  Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)); accord Thornton v. City of St. Helens,

19  425 F.3d 1158, 1164 (9th Cir. 2005) ("A procedural due process claim hinges on proof of two

20  elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate

21  procedural protections.") (citation and quotation marks omitted).  Second, in regards to a

22  substantive due process claim, the "Due Process Clause of the Fourteenth Amendment protects

23  against any government conduct that 'shocks the conscience.'"  Crowe v. City of San Diego, 608

24  F.3d 406, 431 (9th Cir. 2010) (citation omitted); see also Krainski, 616 F.3d at 969 ("The

25  guarantee of substantive due process provides heightened protection against government

26  interference with certain fundamental rights and liberty interests.") (citation and quotation marks

omitted); <u>Corales v. Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2008) ("Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'") (citations and quotation marks omitted).  "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived [him] of a constitutionally protected life, liberty or property interest." <u>Shanks v. Dressel</u>, 540 F.3d 1082, 1087 (9th Cir. 2008). Plaintiff's complaint does not presently allege facts that support that plaintiff's constitutionally protected rights were violated such that plaintiff may proceed on a procedural or substantive due process claim.  Accordingly, plaintiff is granted leave to amend his complaint to the extent that he can allege such facts.

2.    <u>Plaintiff's Equal Protection Claim (Claim 2)</u>

Plaintiff's second claim for relief alleges a violation of plaintiff's rights of equal protection that are provided by the Fourteenth Amendment.  At the heart of this claim, plaintiff alleges: "Defendants, FRYSON and CPS intentionally harassed and blackmailed Plaintiff as described herein, therefore depriving Plaintiff of his Fourteenth Amendment right to Equal Protection as provided by the United States Constitution." (Compl. ¶ 39.)  Plaintiff vaguely suggests that such an alleged violation was consistent with Yuba CPS's policies, customs, and practices, and was also caused by Yuba CPS's improper training, supervision, and discipline. (<u>Id.</u> ¶¶ 41-42.)  The undersigned recommends that this claim be dismissed with leave to amend because plaintiff has not alleged facts that state a plausible equal protection claim.

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Thornton</u>, 425 F.3d at 1166 (citation and quotation marks omitted); <u>see also</u> <u>Enquist v. Ore. Dep't of Agric.</u>, 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others.") (citation and

1  quotation marks omitted).  The court must first identify the defendant's classification of groups,

2  and the "groups must be comprised of similarly situated persons so that the factor motivating the

3  alleged discrimination can be identified."  Id. at 1166-67.  Additionally, a plaintiff may assert

4  what has been called a "class of one" equal protection claim, which may generally lie where an

5  individual has been irrationally singled out for discrimination by the government.  See Enquist,

6  553 U.S. at 601 (noting that "an equal protection claim can in some circumstances be sustained

7  even if the plaintiff has not alleged class-based discrimination, but instead claims that she has

8  been irrationally singled out as a so-called 'class of one'"); Vill. of Willowbrook v. Olech, 528

9  U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection

10 claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally

11 treated differently from others similarly situated and that there is no rational basis for the

12 difference in treatment."); N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)

13 ("In order to claim a violation of equal protection in a class of one case, the plaintiff must

14 establish that the City intentionally, and without rational basis, treated the plaintiff differently

15 from others similarly situated.").  To succeed on a "class of one" claim, a plaintiff must

16 demonstrate that the government intentionally treated the plaintiff differently than other similarly

17 situated people and without a rational basis for doing so.  See Gerhart v. Lake County, Mont.,

18 637 F.3d 1013, 1021 (9th Cir. 2011).

19         It is unclear from plaintiff's equal protection claim, as pled, whether plaintiff is

20 claiming discrimination based on his membership in a protected class or a "class of one" claim.

21 Indeed, it is unclear what governmental discriminatory treatment is at issue insofar as an equal

22 protection claim is concerned.  Accordingly, plaintiff has failed to state a plausible equal

23 protection claim, and the undersigned recommends that this claim be dismissed without

24 prejudice.  In amending his complaint, plaintiff should carefully consider whether he can

25 legitimately state an equal protection claim under the decisions of the Supreme Court and the

26 Ninth Circuit Court of Appeals.

3.   <u>Municipal Liability Based on a Policy, Custom, or Practice, Etc.</u>

As discussed above, plaintiff's Section 1983 claims are subject to dismissal. Assuming that the district judge assigned to this case agrees with the assessment above, plaintiff will be granted leave to amend his Fourteenth Amendment due process and equal protection claims to more clearly allege facts regarding the nature of the constitutional violations claimed by plaintiff. Nevertheless, the County seeks dismissal of plaintiff's Section 1983 claims on the additional ground that plaintiff has not adequately alleged a municipal claim under the remaining requirements of <u>Monell</u>. (<u>See</u> County's Memo. at 5-6.) In short, the County contends that plaintiff has not satisfactorily alleged a policy, custom, or practice of the County implemented by persons having policy-making authority so as to substantiate a municipal Section 1983 claim. The undersigned declines to reach this aspect of the County's motion to dismiss at this time because of the lack of clarity regarding plaintiff's claims. Without a clearer understanding of the constitutional violations alleged by plaintiff, and the precise facts supporting such alleged violations, it would be imprudent to presently address the remaining elements of a <u>Monell</u> claim.

Before moving on, the undersigned briefly notes the rather lenient standard applicable to the pleading of a <u>Monell</u> claim in this circuit. In the Ninth Circuit, "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" <u>Karim-Panahi</u>, 839 F.2d at 624 (quoting <u>Shah v. County of L.A.</u>, 797 F.2d 743, 747 (9th Cir. 1986)); <u>accord</u> <u>Whitaker v. Garcetti</u>, 486 F.3d 572, 581 (9th Cir. 2007); <u>Lee</u>, 250 F.3d at 682-83. Here, plaintiff alleges a number of <u>Monell</u>-related "buzz" phrases that might survive a motion to dismiss given the lenient, prevailing standard. He alleges that: (1) Yuba CPS "delegated its final policy-making authority" to Fryson (Compl. ¶ 12); (2) Yuba CPS "adopted and ratified" each of Fryson's decisions "as its own policies, customs, practices or decisions, as if the same had been promulgated directly by CPS" (<u>id.</u> ¶¶ 12, 33); (3) Fryson acted as an official policy maker and/or was vested with policy-

1  making authority (id. ¶¶ 13, 31-32); (4) Fryson's conduct "was consistent with the

2  unconstitutional policies, customs and practices set forth by CPS" (id. ¶¶ 33, 41); and (5) Yuba

3  CPS failed to adequately train, supervise, or discipline its agents and officers and such failures

4  caused the constitutional violations alleged (id. ¶¶ 34, 42).  That said, and as noted at the hearing,

5  if plaintiff is granted leave to amend his complaint, plaintiff should consider more carefully or

6  thoroughly explaining in his amended complaint the precise factual bases for his municipal

7  liability claims.

8          B.      Plaintiff Adequately Alleged Compliance With The Government Claims Act

9              The County contends that plaintiff's state law claims for negligent supervision,

10  hiring, and retention, negligent infliction of emotional distress, fraud, and violations of Civil

11  Code § 52.1 must be dismissed with prejudice because plaintiff failed to file a government claim

12  prior to initiation of this action.  (County's Memo. at 8.)  Plaintiff counters that he in fact served

13  a government claim on the County.  (Pl.'s Opp'n at 5.)

14              California's Government Claims Act, which is also known as the California Tort

15  Claims Act,[9] provides that a party seeking to recover money damages from a public entity or its

16  employees must submit a claim to the entity before filing suit in court, generally no later than six

17  months after the cause of action accrues.[10]  See Cal. Govt. Code §§ 905, 911.2, 945.4, 950-950.2.

18  Timely presentation of claims is not merely a procedural requirement but is an element of the

19  plaintiff's cause of action.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209, 164 P.3d 630,

20  634 (2007) ("Timely claim presentation is not merely a procedural requirement, but is, as this

21

22          [9]  In 2007, the California Supreme Court adopted the practice of using the title
   "Government Claims Act" instead of the more traditional "California Tort Claims Act" to
23  adequately capture the breadth of the statutory framework and to reduce confusion over issues
   such as whether breach of contract claims fall within the statutory provisions.  See City of
24  Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 & ns. 6-7, 171 P.3d 20, 27-28 & ns. 6-7
   (2007).

25

26          [10]  A state's claim presentment requirements do not apply to federal civil rights actions.
   Ford v. Long Beach Unified Sch. Dist., 461 F.3d 1087, 1089-90 (9th Cir. 2006).

1  court long ago concluded, a condition precedent to plaintiff's maintaining an action against

2  defendant, and thus an element of the plaintiff's cause of action" (citation and quotation marks

3  omitted).).  A plaintiff may sue the public entity and its employees only after the entity has acted

4  upon or is deemed to have rejected the claim.  Id.; see also Mangold v. Cal. Pub. Utilities

5  Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a

6  condition precedent to suit against a public entity, the timely presentation of a written claim and

7  the rejection of the claim in whole or in part.").  A plaintiff's "failure to allege facts

8  demonstrating or excusing compliance with the claims presentation requirement subjects a claim

9  against a public entity" to dismissal for failure to state a claim.[11]  See State v. Superior Court

10  (Bodde), 32 Cal. 4th 1234, 1239, 90 P.3d 116, 119 (2004).

11          Here, plaintiff's complaint alleges that he "submitted a timely claim under the

12  government tort claims act on or about February 4, 2009, to defendant Public Entity, and has the

13  appropriate standing to bring this action."  (Compl. ¶ 1.)  The County acknowledges that plaintiff

14  has alleged compliance with the Government Claims Act, but contends that plaintiff did not in

15  fact file a government claim with the County.  It relies on a declaration of Donna Stottlemeyer,

16  who is employed as the clerk of the County's Board of Supervisors, which represents the

17  following:

18          On or around February 4, 2009, I did not receive a claim filed by
            Christopher Lindsay with either Yuba County or Yuba Child Protective
19          Services.  In fact, I have never received a tort claim filed by Christopher
            Lindsay over his interactions with former Yuba County employee,
20          Yolanda Fryson.

21  (Stottlemeyer Decl. ¶ 2, Dkt. No. 13, Doc. No. 13-2.)  In response, plaintiff filed a declaration of

22

23

―――――――――――――

24          [11]  The Ninth Circuit Court of Appeals has held that a district court may properly dismiss
        supplemental state law claims for failure to allege compliance or an excuse from compliance
25      with the claims presentation requirement, but errs by failing to instruct a plaintiff regarding the
        necessity of alleging compliance with the exhaustion requirements.  See Karim-Panahi, 839 F.2d
26      at 627.

1   Arshak Bartoumian, an attorney that plaintiff retained to file a government claim on his behalf.[12]

2   (Bartoumian Decl., Ex. B to Pl.'s Opp'n to Mot. to Dismiss, Dkt. No. 18.)  The Bartoumian

3   declaration represents under penalty of perjury that Bartoumian requested a claim form from the

4   County, received the form, directed plaintiff to sign the form, and mail-served the completed

5   government claim to the County's Board of Supervisors on or about February 4, 2009.  (See id.

6   ¶¶ 2-4.)  It also appends plaintiff's three-page government claim, dated January 23, 2009, which

7   was completed on a form entitled "County of Yuba Claim for Damages."  (Id., Ex. A.)  The

8   County filed an evidentiary objection to Exhibit A to the Bartoumian declaration—the actual

9   government claim—on the grounds that plaintiff has not authenticated that document.  (See

10  County's Obj. to Evidence, Dkt. No. 20, Doc. No. 20-1.)

11          The undersigned concludes that, taking plaintiff's allegations as true, plaintiff

12  satisfactorily alleged substantial compliance with the Government Claims Act.  (See Compl. ¶ 1.)

13  On a Rule 12(b)(6) motion, the court need not, and cannot, resolve factual disputes regarding

14  actual compliance with the Government Claims Act.  The undersigned further declines to convert

15  the County's motion to a motion for partial summary judgment.  Moreover, the court has no basis

16  to conclude as a matter of law that plaintiff did not file a tort claim at all simply because the

17  County's clerk cannot recall receiving such a claim.  Accordingly, the County's argument

18  regarding exhaustion is not well-taken.  The undersigned overrules the County's objection as

19  moot because the undersigned need not, and has not, relied on the controverted exhibit in

20  concluding that plaintiff adequately alleged compliance with the presentation requirements of the

21  Government Claims Act.

22          C.      Plaintiff May Only Allege Common Law Claims Against A Public Entity
                    Pursuant To An Authorizing Statute

23

24          The County further argues that plaintiff's state law claims for negligent

25

26  _____
    [12]  The Bartoumian declaration is only partially legible due to apparent copying problems.

17

1    supervision, hiring, and retention, negligent infliction of emotional distress, and fraud "are

2    deficient because they are common law claims that cannot be made against a public entity."

3    (County's Memo. at 7.)   The County argues that these claims—enumerated as plaintiff's third,

4    fourth, and sixth claims for relief—are barred by California Government Code § 815.  (Id.)

5    Plaintiff does not substantively oppose the County's argument in this regard.

6              The California Government Claims Act immunizes public entities from tort

7    liability in all cases except those where liability is explicitly created by a particular statute.[13]  Cal.

8    Gov't Code § 815(a).[14]  See also Hoff v. Vacaville Unified Sch. Dist., 19 Cal. 4th 925, 932, 968

9    P.2d 522, 526 (1998) (stating that "in California, all government tort liability must be based on

10   statute," and citing Cal. Gov't Code § 815(a)) (citation and quotation marks omitted).  However,

11   pursuant to California Government Code § 815.2(a), a public entity may be sued in tort based on

12   a respondeat superior theory of vicarious liability.  See, e.g., Miklosky v. Regents of Univ. of

13   Cal., 44 Cal. 4th 876, 900, 188 P.3d 629, 644 (2008) (noting that "Section 815.2, subdivision (a),

14   codifies the doctrine of respondeat superior as it applies to public entities"); Hoff, 19 Cal. 4th at

15   932, 968 P.2d at 526 (stating that through Section 815.2(a), "the California Tort Claims Act

16   expressly makes the doctrine of respondeat superior applicable to public employers") (citing

17   _____

18      [13]  The parties do not dispute that the County is a public entity.  See Cal. Gov't Code
     § 811.2 ("'Public entity' includes the state . . . a county, city, district, public authority, public
     agency, and any other political subdivision or public corporation in the State."); see also Compl.

19   ¶ 8 (alleging that Yuba CPS is a public entity).

20      [14]  The Senate Legislative Committee Comments to California Government Code § 815
     provide, in pertinent part:

21
             This section abolishes all common law or judicially declared forms of

22           liability for public entities, except for such liability as may be required by
             the state or federal constitution, e.g., inverse condemnation.  In the

23           absence of a constitutional requirement, public entities may be held liable
             only if a statute (not including a charter provision, ordinance or regulation)

24           is found declaring them to be liable. . . . [T]he practical effect of this
             section is to eliminate any common law governmental liability for

25           damages arising out of torts.  The use of the word "tort" has been avoided,
             however, to prevent the imposition of liability by the courts by

26           reclassifying the act causing the injury.

1   Mary M. v. City of L.A., 54 Cal. 3d 202, 209, 814 P.2d 1341, 1344 (1991)).  Specifically, a

2   "public entity is liable for injury proximately caused by an act or omission of an employee of the

3   public entity within the scope of his employment if the act or omission would, apart from this

4   section, have given rise to a cause of action against that employee or his personal representative."

5   Cal. Gov't Code § 815.2(a).[15]

6          Here, the County only argues that plaintiff's negligent supervision, hiring, and

7   retention, negligent infliction of emotional distress, and fraud claims are barred by California

8   Government Code § 815.  However, plaintiff alleges in his complaint that Yuba CPS "is

9   responsible for the acts of its employees committed during the courts [sic] and scope of their

10  employment pursuant to Government Code Section 815.2."  (Compl. ¶ 5.)  Furthermore, plaintiff

11  alleges that "at all times relevant thereto Defendants responsible [sic] for the acts committed

12  individually and personally during the court [sic] and scope of their employment pursuant to

13  Government Code Section 815.2."  (Id. ¶ 6.)  The County did not acknowledge these allegations

14  in its moving papers or reply brief.  Although these allegations are somewhat generally stated, the

15  undersigned concludes that plaintiff has adequately alleged a statutory basis for his tort claims of

16  negligent infliction of emotional distress and fraud against the County to the extent that these

17  claims are based on a respondeat superior theory of liability.  To the extent that these claims are

18  premised on the direct liability of the County, such claims should be dismissed without prejudice,

19  and plaintiff should be granted leave to amend his complaint to allege a statutory basis for the

20  County's alleged direct liability, if any.  If plaintiff cannot in good faith allege a statutory basis

21  for the County's direct liability for negligent infliction of emotional distress and fraud, he should

22  not re-plead such claims against the County on a direct liability theory.

23          Plaintiff's citation to Section 815.2 does not save his negligent supervision,

24

25      [15]  Although no extended discussion is warranted here, the undesigned notes that it is not
    entirely certain what types of illegal conduct by a public entity's employee falls within the scope
    of a public employee's employment.  See M.P. v. City of Sacramento, 177 Cal. App. 4th 121,

26  128-33, 98 Cal. Rptr. 3d 812, 818-22 (Ct. App. 2009).

1  hiring, and retention claim from dismissal because that claim is not premised on a respondeat

2  superior theory of liability; it is a claim alleged directly against the County or one of its agencies.

3  Such a claim is based on the common law and, accordingly, the undersigned recommends that

4  plaintiff's third claim for relief be dismissed.  However, such dismissal should be without

5  prejudice, and plaintiff should be granted leave to attempt to present a statutory basis for his

6  negligent supervision, hiring, and retention claim, if he is able.

7          D.      California Government Code § 818.8 Does Not Bar Plaintiff's Claim of Fraud
                   Against the County
8

9          The County next contends that plaintiff may not attempt to hold it liable for

10  Fryson's alleged fraudulent misrepresentations that are at the heart of this action because such

11  vicarious liability is barred by Government Code § 818.8.  (County's Memo. at 8-9.)  Plaintiff

12  does not substantively oppose the County's argument.  Nevertheless, the undersigned concludes

13  that, at least as pled, plaintiff's fraud claim does not fall within the immunity conferred by

14  Section 818.8.

15          California Government Code § 818.8 provides: "A public entity is not liable for

16  an injury caused by misrepresentation by an employee of the public entity, whether or not such

17  misrepresentation be negligent or intentional."  See also L.A. Unified Sch. Dist. v. Great Am.

18  Ins. Co., 49 Cal. 4th 739, 748, 234 P.3d 490, 495 (2010) (noting that Government Code § 818.8

19  bars tort actions for fraudulent misrepresentation against a public entity).  California Courts of

20  Appeal have held that to the extent this immunity applies, it is absolute in nature.  See Masters v.

21  San Bernardino County Employees Retirement Ass'n, 32 Cal. App. 4th 30, 43, 37 Cal. Rptr. 2d

22  860, 869 (Ct. App. 1995) (recognizing that "the immunity of a public entity for misrepresentation

23  by its employee, whether intentional or negligent, is absolute"); accord Harshbarger v. City of

24  Colton, 197 Cal. App. 3d 1335, 1340, 243 Cal. Rptr. 463, 465-66 (Ct. App. 1988).  However, the

25  California Supreme Court confined the scope of this immunity in Johnson v. State of California,

26  69 Cal. 2d 782, 800, 447 P.2d 352, 365 (1968), where it distinguished between different forms of

1   "misrepresentation."  There, the court summarized: "In short, 'misrepresentation,' as a tort

2   distinct from the general milieu of negligent and intentional wrongs, applies to interferences with

3   financial or commercial interest.  The Legislature designed section 818.8 to exempt the

4   governmental entity from this type of liability."  Id.; accord Garcia v. Superior Court, 50 Cal. 3d

5   728, 738 n.8, 789 P.2d 960, 965 n.8 (1990); see generally Jopson v. Feather River Air Quality

6   Mgmt. Dist.,108 Cal. App. 4th 492, 133 Cal. Rptr. 2d 506 (Ct. App. 2003) (reviewing numerous

7   cases addressing public entity immunity under California Government Code § 818.8).

8   　　　　　　Here, plaintiff's fraud claim alleges that defendants blackmailed plaintiff with the

9   "specific purpose of depriving Plaintiff of his funds," and that plaintiff was injured, in part, "by

10   loss of use of his funds."  (Compl. ¶ 80.)  Plaintiff also alleges that he was forced to retain an

11   attorney as a result of the misrepresentations concerned.  (Id. ¶ 79.)  Construing plaintiff's

12   allegations in the broadest and most literal sense, plaintiff's fraudulent misrepresentation claim

13   technically concerns an alleged interference with his financial interest.  However, plaintiff's

14   claims do not resemble the types of interferences with financial or commercial interests that

15   California courts have held fall within the scope of the immunity provided in Section 818.8.  See,

16   e.g., Tokeshi v. California, 217 Cal. App. 3d 999, 1005-08, 266 Cal. Rptr. 255, 259-61 (Ct. App.

17   1990) (holding that the immunity conferred by Section 818.8 applied where the plaintiffs, who

18   were raspberry growers, alleged that a state inspector gratuitously instructed them to spray their

19   crop with a pesticide that exceeded the permissible tolerance and the growers were subsequently

20   prohibited from harvesting and selling their crop); Harshbarger, 197 Cal. App. 3d at 1342, 243

21   Cal. Rptr. at 467 (holding that the city was immune for the acts of its employees where the city's

22   building inspectors intentionally signed a document indicating that a residence met applicable

23   building codes when the inspectors knew it did not, which caused plaintiffs to spend an

24   additional $295,000 to bring the residence to code); Grenell v. City of Hermosa Beach, 103 Cal.

25   App.3d 864, 867-68, 873-75, 163 Cal. Rptr. 315, 317, 321 (Ct. App. 1980) (holding that the

26   immunity in Section 818.8 applied where the city's employees issued an erroneous report

21

1    indicating that a property was zoned for rental use when it was not).  Plaintiff's claim more

2    resembles the general sort of negligent and intentional wrongs that the court in <u>Johnson</u> excluded

3    from the scope of Section 818.8.  <u>See Johnson</u>, 69 Cal. 2d at 799-800, 447 P.2d at 364-65

4    (holding that a parole officer's misrepresentations or withholding of information regarding the

5    homicidal tendencies of a parolee foster youth made to a prospective foster mother did not fall

6    within California Government Code § 818.8); <u>Michael J. v. L.A. County Dep't of Adoptions</u>, 201

7    Cal. App. 3d 859, 872, 247 Cal. Rptr. 504, 510-11 (Ct. App. 1988) (holding that California

8    Government Code § 818.8 did not immunize the county from liability for negligent or intentional

9    misrepresentations or concealment of information regarding the health of prospective adoptee);

10   <u>Bastian v. County of San Luis Obispo</u>, 199 Cal. App. 3d 520, 533-34, 245 Cal. Rptr. 78, 84-85

11   (Ct. App. 1988) (holding that county was not immune from liability where a deputy sheriff

12   placed an empty liquor bottle next to a deceased driver at an accident scene, a photographer took

13   and published a photograph of the scene without knowledge of the doctored scene, the

14   photographer subsequently lost his job and was sued by the deceased's family).  None of these

15   cases is perfectly analogous to the facts of this case.  However, at this early stage of the

16   proceedings, the undersigned cannot conclude as a matter of law and based on the pleadings that

17   the County is entitled to immunity under California Government Code § 818.8.  Accordingly, the

18   County's motion to dismiss should be denied in this respect.

19        E.      <u>Plaintiff's Claim Under the Bane Act Is Subject to Dismissal With Prejudice</u>

20               Next, the County moves to dismiss plaintiff's claim under the Tom Bane Civil

21   Rights Act, California Civil Code § 52.1, on the grounds that plaintiff's claim is premised on

22   Fryson's speech, and plaintiff failed to allege a requisite threat of violence.  (<u>See</u> County Memo.

23   at 9.)  Again, plaintiff does not substantively oppose the County's contention.

24               "[California] Civil Code section 52.1 authorizes an action at law, a suit in equity,

25   or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion,

26   ////

with an individual's exercise or enjoyment of rights secured by federal or state law."[16] <u>Jones v.</u>
<u>Kmart Corp.</u>, 17 Cal. 4th 329, 331, 949 P.2d 941, 942 (1998).  "The essence of a Bane Act claim
is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'),
tried to or did prevent the plaintiff from doing something he or she had the right to do under the
law or to force the plaintiff to do something that he or she was not required to do under the law."
<u>Fenters v. Yosemite Chevron</u>, 761 F. Supp. 2d 957, No. CV-F-05-1630 OWW/DLB, 2010 WL
5475945, at *34 (E.D. Cal. Dec. 30, 2010) (quoting <u>Austin B. v. Escondido Union School Dist.</u>,
149 Cal. App. 4th 860, 883, 57 Cal. Rptr. 3d 454 (Ct. App. 2007)); <u>accord</u> <u>Bailey v. County of</u>
<u>San Joaquin</u>, 671 F. Supp. 2d 1167, 1179 (E.D. Cal. 2009).  The statute expressly addresses when
"speech alone" may provide a basis for a claim under the Bane Act:

> (j) *Speech alone is not sufficient to support an action brought pursuant to*
> *subdivision (a) or (b), except upon a showing that the speech itself*
> *threatens violence against a specific person or group of persons*; and the
> person or group of persons against whom the threat is directed reasonably
> fears that, because of the speech, violence will be committed against them
> or their property and that the person threatening violence had the apparent
> ability to carry out the threat.

---

[16]  California Civil Code §§ 52.1(a)-(b) provide, in part:

> (a) If a person or persons, whether or not acting under color of law,
> interferes by threats, intimidation, or coercion, or attempts to interfere by
> threats, intimidation, or coercion, with the exercise or enjoyment by any
> individual or individuals of rights secured by the Constitution or laws of
> the United States, or of the rights secured by the Constitution or laws of
> this state, the Attorney General, or any district attorney or city attorney
> may bring a civil action for injunctive and other appropriate equitable
> relief in the name of the people of the State of California, in order to
> protect the peaceable exercise or enjoyment of the right or rights
> secured. . . .

> (b) Any individual whose exercise or enjoyment of rights secured by the
> Constitution or laws of the United States, or of rights secured by the
> Constitution or laws of this state, has been interfered with, or attempted to
> be interfered with, as described in subdivision (a), may institute and
> prosecute in his or her own name and on his or her own behalf a civil
> action for damages, including, but not limited to, damages under Section
> 52, injunctive relief, and other appropriate equitable relief to protect the
> peaceable exercise or enjoyment of the right or rights secured.

1   Cal. Civ. Code 52.1(j) (emphasis added); see also Martin v. County of San Diego, 650 F. Supp.

2   2d 1094, 1108 (S.D. Cal. 2009) ("Although the language of § 52.1(a) does not mention

3   'violence,' § 52.1(j) explicitly provides that violence is a required element where the 'threat,

4   intimidation or coercion' is based purely upon a defendant's statements.").

5   　　　　Here, plaintiff's Bane Act claim is based on Fryson's attempt to blackmail

6   plaintiff through speech alone.  Plaintiff does not allege that Fryson's speech threatened violence

7   against plaintiff, another person or persons, or plaintiff's property.  At the hearing, plaintiff

8   confirmed that he is not alleging that Fryson committed any violent act or threatened him with

9   violence.  Accordingly, plaintiff's Bane Act claim is barred under California Civil Code

10  § 52.1(j), and the undersigned recommends that plaintiff's Bane Act claim, enumerated as

11  plaintiff's seventh claim for relief, be dismissed.  Based on the complaint and plaintiff's

12  representations at the hearing, the dismissal of plaintiff's Bane Act claim should be with

13  prejudice.

14  　　　　F.　　The County's Motion to Strike Plaintiff's Prayer for Punitive Damages

15  　　　　Finally, the County moves, pursuant to Federal Rule of Civil Procedure 12(f), to

16  strike plaintiff's request for relief in the form of punitive damages on the grounds that:

17  (1) punitive damages are not available in connection with Section 1983 claims asserted against

18  public entities, and (2) California Government Code § 818 bars awards of punitive damages

19  against public entities.  (County's Memo. at 9-10; see also Third Am. Compl. ¶¶ 29, 36, 75, 80-

20  81, 90, and p. 14.)  The undersigned recommends that the County's motion to strike be denied.

21  　　　　The County correctly argues that a plaintiff may not recover punitive damages

22  from a municipality on a claim brought pursuant to 42 U.S.C. § 1983.  The Supreme Court has

23  squarely held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."

24  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); accord Jefferson v. City of

25  Tarrant, Ala., 522 U.S. 75, 79 (1997); see also Bell v. Clackamas County, 341 F.3d 858, 868 n.4

26  (9th Cir. 2003).  The County is also correct that, as a general matter, the California Government

1  Code bars punitive damages awards against public entities.  See Cal. Gov't Code § 818; see also

2  Westlands Water Dist. v. Amoco Chem. Co., 953 F.2d 1109, 1113 (9th Cir. 1991) ("California

3  Government Code § 818 bars any award of punitive damages against a public entity.").

4  However, the Ninth Circuit Court of Appeals recently held that Federal Rule of Civil

5  Procedure 12(f) does "not authorize district courts to strike claims for damages on the ground

6  that such claims are precluded as a matter of law."  Whittlestone, Inc. v. Handi-Craft Co., 618

7  F.3d 970, 974-75 (9th Cir. 2010) (reversing the district court's order striking, pursuant to

8  Rule 12(f), plaintiff's claim for lost profits and consequential damages where the defendant had

9  argued that such categories of damages were precluded as a matter of law).  The County is

10  attempting to do exactly what the Court of Appeals held was impermissible in that the County

11  seeks to strike plaintiff's prayer for punitive damages on the grounds that a plaintiff may not, as a

12  matter of law, recover punitive damages against a public entity.  This court lacks authority to

13  strike plaintiff's prayer for punitive damages pursuant to Rule 12(f) and, accordingly, the

14  undersigned recommends that the County's motion to strike be denied.

15  IV.    CONCLUSION

16       For the reasons stated above, IT IS HEREBY ORDERED that:

17       1.    Defendant County of Yuba's objection to evidence attached to plaintiff's

18  written opposition is denied as moot because the undersigned has not relied on the evidence to

19  which the objection is directed.

20       2.    Defendant County of Yuba's motion for a more definite statement is

21  denied in light of the recommended resolution of plaintiff's motion to dismiss.

22       It is FURTHER RECOMMENDED that:

23       1.    Defendant County of Yuba's motion to dismiss (Dkt. No. 13) be granted in

24  part and denied in part.  Specifically, it is recommended that:

25       a.    Plaintiff's first claim for relief, alleging a violation of plaintiff's

26  due process rights pursuant to 42 U.S.C. § 1983, be dismissed with prejudice to the extent it

alleges a violation of plaintiff's Fourth Amendment and Fifth Amendment due process rights, but be dismissed without prejudice to the extent it alleges a violation of plaintiff's Fourteenth Amendment due process rights.

    b.  Plaintiff's second claim for relief, alleging a violation of plaintiff's equal protection rights pursuant to 42 U.S.C. § 1983, be dismissed without prejudice.

    c.  Plaintiff's third claim for relief, alleging a claim of negligent supervision, hiring, and retention, be dismissed without prejudice.

    d.  Plaintiff's fourth claim for relief, alleging a claim of fraud, be dismissed without prejudice to the extent that it is a claim for direct liability against the County. *However*, this fraud claim may proceed as pled to the extent it asserts a claim premised on a respondeat superior theory of vicarious liability.

    e.  Plaintiff's sixth claim for relief, alleging a claim of negligent infliction of emotional distress, be dismissed without prejudice to the extent that it is a claim for direct liability against the County. *However*, this claim may proceed as pled to the extent it asserts a claim premised on a respondeat superior theory of vicarious liability.

    f.  Plaintiff's seventh claim for relief, alleging a violation of California Civil Code § 52.1, be dismissed with prejudice.

   2.  Defendant County of Yuba's motion to strike be denied.

   3.  Plaintiff be granted 30 days from the date of the district judge's order addressing these proposed findings and recommendations to file an amended complaint that is complete in itself. If the district judge agrees that leave to amend should be granted, the amended complaint must bear the docket number assigned to this case and must be entitled "First Amended Complaint." Plaintiff must file an original and one copy of the first amended complaint. Failure to timely file a first amended complaint in accordance with this order may result in a recommendation that this action be dismissed. Additionally, plaintiff is informed that the court cannot refer to prior pleadings in order to make an amended complaint complete.

1    Eastern District Local Rule 220 requires that an amended complaint be complete in itself.  This is

2    because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

3    Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the

4    latter being treated thereafter as non-existent.").  Accordingly, once plaintiff files an amended

5    complaint, the original no longer serves any function in the case.  Therefore, "a plaintiff waives

6    all causes of action alleged in the original complaint which are not alleged in the amended

7    complaint," London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981), and defendants

8    not named in an amended complaint are no longer defendants.  Ferdik v. Bonzelet, 963 F.2d

9    1258, 1262 (9th Cir. 1992).

10              These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

14   Such a document should be captioned "Objections to Magistrate Judge's Findings and

15   Recommendations."  Any response to the objections shall be filed with the court and served on

16   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

17   Failure to file objections within the specified time may waive the right to appeal the District

18   Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

19   1153, 1156-57 (9th Cir. 1991).

20              IT IS SO ORDERED AND RECOMMENDED.

21   DATED:  June 14, 2011

22

23                                        _____

24                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

25

26