IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER LINDSAY,

    Plaintiff,

v.

YOLANDA FRYSON, individually and in official capacity as Social Worker; YUBA COUNTY CHILD PROTECTIVE SERVICES,

    Defendants.

No. 2:10-cv-02842 LKK KJN PS

ORDER and FINDINGS AND RECOMMENDATIONS

/

Presently before the court are defendant County of Yuba's ("County")[1] motions to dismiss plaintiff's Second Amended Complaint and for a more definite statement, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), respectively (Dkt. No. 31).[2] Because oral argument would not materially aid the resolution of the pending motions, this matter is submitted on the briefs and record without a hearing (Dkt. No. 34). See Fed. R. Civ. P. 78(b); E. Dist.

---

[1] The County has appeared in this action and asserted that it was erroneously sued as "Yuba County Child Protective Services."

[2] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

1  Local Rule 230(g).  The undersigned has considered the briefs and appropriate portions of the
2  record in this case and, for the reasons stated below, recommends that the County's motion to
3  dismiss be granted in part and denied in part.  The undersigned summarily denies the County's
4  motion for a more definite statement because the County did not materially brief the substantive
5  merits of that motion.

6  I.     BACKGROUND

7          Plaintiff's Second Amended Complaint alleges claims against: (1) Yolanda
8  Fryson,[3] who is alleged to be have been a social worker employed by the County in the office of
9  Yuba County Child Protective Services ("Yuba CPS") at all times material to plaintiff's claims;
10 and (2) Yuba CPS, on whose behalf the County has appeared.  (See Second Am. Compl. ¶¶ 4-5,
11 12-13.)  Plaintiff's claims arise from an alleged failed blackmail scheme perpetrated by Fryson
12 against plaintiff in September and October of 2008.  (See id. ¶¶ 16-20.)

13          Plaintiff alleges that Fryson contacted him and told him that she "had information
14 that a claim was filed and that Plaintiff was being accused of sexual molestation of a minor,
15 sexual relations with a 17 year old girl and physical abuse of Plaintiff's girlfriend."  (Second Am.
16 Compl. ¶ 17.)  Plaintiff further alleges that Fryson told him that she could "make the charges 'go
17 away'" in exchange for a monetary payment to Fryson in the amount of $10,000.  (Id. ¶ 18.)
18 Fryson allegedly "showed her Yuba County badge" to plaintiff during Fryson's initial meeting
19 with plaintiff.  (Id.)

20         Plaintiff alleges that he was forced to retain legal counsel to defend against the
21 purported charges of molestation and abuse and any criminal matters that might arise therefrom.
22 (See Second Am. Compl. ¶ 19.)  Plaintiff alleges that after speaking with his attorney, he
23 contacted the Placer County Sheriff's Department,และ that the Placer County Sheriff's
24 Department "assisted the Plaintiff in watching the bribe being taken and bugged the phone calls

---

[3] Although Fryson filed an answer to plaintiff's prior complaint (Fryson's Answer, Dkt.
No. 5), she has not yet filed an answer to the Second Amended Complaint.

1   made from [Fryson]." (Id. ¶ 23.) Plaintiff appears to allege, in essence, that law enforcement
2   personnel assisted him in setting up a "sting operation" to catch Fryson accepting a bribe.[4]

3   Plaintiff claims that he was damaged by these events in several respects. He
4   alleges that he was forced to "put up a $5,000 retainer for an attorney for the quick advise [sic]
5   and direction for the ordeal that [he] was going through." (Second Am. Compl. ¶ 21.) He further
6   alleges that he feared arrest and "could not go home or to his office until he was able to prove
7   that the allegations and claims made of him sexually molesting a minor was [sic] fraudulent."
8   (Id.) He also alleges that he suffered mental effects as a result of the alleged blackmail ordeal
9   including emotional distress, high anxiety, depression, sleep loss, heavy drinking, mood swings
10  toward loved ones, loss of interest in everything he was doing, and suicidal thoughts. (See id.
11  ¶¶ 20, 22-25.)

12  Plaintiff alleges that Fryson "was on administrative leave for misconduct" at the
13  time that Fryson allegedly attempted to blackmail him, but that Yuba CPS supervisors had
14  allowed Fryson to retain a law enforcement badge. (See Second Am. Compl. ¶¶ 27, 32.) He
15  further alleges that prior to Fryson's leave, Fryson's supervisor, Eric Runge, "stated that he
16  believed Fryson to be dishonest" and "found [Fryson] to be intimidating." (Id. ¶ 27.) In addition
17  to alleging that Fryson's "truthfulness was in question around the office," plaintiff alleges that
18  Yuba CPS hired Fryson knowing that Fryson had a prior criminal conviction; specifically,
19  plaintiff alleges that Fryson had been convicted of grand theft in 1990. (Id.) He further alleges
20  that Fryson had been arrested in 2003 for check fraud in Florida and "was disciplined in 2008 for
21  preparing false time sheets and mileage as a Child Protective Services worker." (Id.)

22  Plaintiff's Second Amended Complaint alleges the following six claims for relief
23  against Yuba CPS: (1) violation of plaintiff's due process rights under the Fourth, Fifth and

---

[4] Fryson's answer to plaintiff's original complaint alleges that plaintiff "worked with detectives to set up a sting operation" against Fryson. (Fryson's Answer at 2.) However, Fryson asserts that the goal of the "sting operation" was to entrap her into accepting money offered to her by plaintiff. (See id.)

3

1  Fourteenth Amendments to the United States Constitution (Second Am. Compl. ¶¶ 28-35);

2  (2) violation of plaintiff's rights of equal protection provided by the Fourteenth Amendment (id.

3  ¶¶ 36-44); (3) negligent supervision, hiring, and retention (id. ¶¶ 45-57); (4) fraud (id. ¶¶ 58-63);

4  (5) negligent infliction of emotional distress (id. ¶¶ 75-79); and (6) violation of the Tom Bane

5  Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1 (id. ¶¶ 80-88).[5]  In regards to his

6  constitutional claims, plaintiff alleges that Yuba CPS delegated its policy-making authority to

7  Fryson, that Fryson was an official policy maker, that the County failed to supervise Fryson, and

8  that Yuba CPS adopted and ratified Fryson's decisions as its own policies, customs, and

9  practices. (See, e.g., id. ¶¶ 12-13, 27, 32.)  Plaintiff further alleges that, as to his claims premised

10 on California law, Yuba CPS is responsible or liable for the acts of its employees committed

11 during the course and scope of their employment pursuant to Government Code Section 815.2.

12 (See id. ¶¶ 5-6.)  Plaintiff seeks compensatory damages, punitive damages, attorney's fees and

13 costs, and civil penalties. (See id. at p. 14.)

14 II.    LEGAL STANDARDS

15         A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

16 challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase

17 Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard

18 of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

19 plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see

20 also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "A complaint may survive a

21 motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

22 to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d

23 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "'A claim

---

[5] Plaintiff's also alleges his constitutional claims and his state law claims for fraud, negligent infliction of emotional distress, and violation of the Bane Act against Fryson. Plaintiff's fifth claim for relief alleges a claim intentional infliction of emotional distress, but only against Fryson. (Second Am. Compl. ¶¶ 64-74.)

1 has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
2 reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v.
3 Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at
4 1949). The court accepts all of the facts alleged in the complaint as true and construes them in
5 the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).
6 The court is "not, however, required to accept as true conclusory allegations that are contradicted
7 by documents referred to in the complaint, and [the court does] not necessarily assume the truth
8 of legal conclusions merely because they are cast in the form of factual allegations." Paulsen,
9 559 F.3d at 1071 (citations and quotation marks omitted).

10 The court must construe a pro se pleading liberally to determine if it states a claim
11 and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an
12 opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See
13 Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica
14 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally
15 construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d
16 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally
17 even when evaluating them under Iqbal.).

18 In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may
19 generally consider only allegations contained in the pleadings, exhibits attached to the complaint,
20 and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of
21 Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although
22 the court may not consider a memorandum in opposition to a defendant's motion to dismiss to
23 determine the propriety of a Rule 12(b)(6) motion, see, e.g., Schneider v. Cal. Dep't of Corr., 151
24 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in
25 deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2
26 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be

considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.").

## III.   DISCUSSION

### A.   Plaintiff's Section 1983 Claims

Plaintiff's complaint pleads two claims pursuant to 42 U.S.C. § 1983, both of which allege violations of plaintiff's constitutional rights. Plaintiff's first claim for relief alleges violations of plaintiff's due process rights. His second claim for relief alleges a violation of his equal protection rights. The County moves to dismiss both claims, and each claim is addressed in turn below after a general recitation of the applicable law.

Plaintiff's claims of violations of his constitutional rights are permissibly brought pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Generally, with respect to individual defendants, "Section 1983 imposes civil liability upon an individual who under color of state law subjects or causes, any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) ("To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

6

statutes" (citation omitted).).

A municipality may also be held liable for civil rights violations under Section 1983, but the standards governing the liability of a municipality materially differ from those that govern the liability of individuals who acted under color of state law. Relevant here, in Monell v. Department of Social Services, 436 U.S. 658, the Supreme Court limited municipal liability and held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690 (footnote omitted). The Court further stated that "it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 693; see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

The Ninth Circuit Court of Appeals has held that in order to establish municipal liability, "the plaintiff must establish: (1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." Miranda v. City of Cornelius, 429 F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification in original); see also Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) ("To establish [municipal] liability, a plaintiff must establish that he was deprived of a constitutional right and that the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional

1  right and was the 'moving force' behind the constitutional violation.") (citing <u>Van Ort v. Estate
2  of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996)).  With respect to the last element, "[t]here must
3  be a direct causal link between a municipal policy or custom and the alleged constitutional
4  deprivation." <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 957 (9th Cir. 2008) (en
5  banc) (citation and quotation marks omitted).  Additionally, "a failure to supervise that is
6  'sufficiently inadequate' may amount to [a policy of] 'deliberate indifference,'" although mere
7  negligence in supervision does not give rise to a proper <u>Monell</u> claim.  <u>Dougherty v. City of
8  Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011) (citing <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230,
9  1235 (9th Cir. 1989)).  The Court of Appeals has recognized that in addition to showing that a
10 constitutional violation resulted from an express municipal policy or custom, "[a] plaintiff may
11 also establish municipal liability by demonstrating that (1) the constitutional tort was the result of
12 a longstanding practice or custom which constitutes the standard operating procedure of the local
13 government entity; (2) the tortfeasor was an official whose acts fairly represent official policy
14 such that the challenged action constituted official policy; or (3) an official with final
15 policy-making authority delegated that authority to, or ratified the decision of, a subordinate."
16 <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (citation and quotation marks omitted).

17              1.    <u>Plaintiff's Due Process Claim (Claim 1)</u>

18              Plaintiff's first claim for relief, alleged against the County and Fryson, alleges that
19 "Defendants, and each of them, violated Plaintiff's fundamental constitutional rights to due
20 process of law under, inter alia, the Fourth, Fifth and Fourteenth Amendments to the United
21 States Constitution."  (Second Am. Compl. ¶ 29.)  The County moves to dismiss this claim on
22 several grounds that relate to the nature or scope of the constitutional rights alleged to be at issue.
23 Those arguments are addressed in this subsection, and the County's <u>Monell</u>-specific arguments
24 addressed to municipal liability are addressed further below.

25              As an initial matter, the undersigned notes that plaintiff impermissibly re-alleged
26 in his Second Amended Complaint due process violations premised on the Fourth and Fifth

Amendments to the United States Constitution. The court previously dismissed with prejudice plaintiff's due process claim "to the extent it allege[d] a violation of plaintiff's Fourth Amendment and Fifth Amendment due process rights." (Order, Aug. 11, 2011, at 2, Dkt. No. 25, adopting Order & Findings & Recommendations, June 15, 2011, Dkt. No. 22.) Because plaintiff was not granted leave to re-plead allegations of due process violations based on his Fourth or Fifth Amendment rights, such aspects of plaintiff's due process claim are subject to summary dismissal. Accordingly, the undersigned recommends that plaintiff's claims of due process violations grounded in the Fourth and Fifth Amendments to the United States Constitution be summarily dismissed with prejudice as impermissibly re-pled.[6]

The undersigned next addresses the alleged violation of plaintiff's due process rights arising from the Fourteenth Amendment. In regards to this aspect of plaintiff's due process claim, the County only argues—aside from Monell-specific arguments addressed below—that "Plaintiff does not identify whether he is asserting procedural or substantive due process violations against the COUNTY." (County's Memo. of P. & A. In Supp. of Mot. to Dismiss ("County's Memo.") at 5.) The County notes that the court previously directed plaintiff to more clearly plead in his Second Amended Complaint whether his "Fourteenth Amendment due process claim is premised on an alleged violation of plaintiff's procedural due process rights, his substantive due process rights, or both." (Order & Findings & Recommendations, June 15, 2011, at 11.) The County contends that because plaintiff failed to clarify the nature of his claims in his Second Amended Complaint, plaintiff's due process claim is subject to dismissal with prejudice.

The County's argument in support of dismissal of plaintiff's Fourteenth Amendment due process claim is unpersuasive. Although plaintiff did not expressly label his

---

[6] Alternatively, the court could strike such claims pursuant to Federal Rule of Civil Procedure 12(f)(1). The plaintiff is also cautioned that future instances of failing to comply with the court's orders may result in sanctions including possible dismissal of this action.

due process claim as "procedural" or substantive, the undersigned finds this failure is not the proper basis to dismiss plaintiff's claims with or without prejudice. Plaintiff's has alleged facts that potentially support both types of due process claims, and the County has not substantively attacked the manner in which plaintiff pleaded either type of claim. Without a more persuasive argument from the County, the undersigned does not recommend dismissal of plaintiff's due process claim premised on the Fourteenth Amendment. As noted above, the County's Monell-specific arguments are addressed below.

2. Plaintiff's Equal Protection Claim (Claim 2)

Plaintiff's second claim for relief alleges a violation of plaintiff's rights of equal protection provided by the Fourteenth Amendment. (Second Am. Compl. ¶¶ 36-44.) At the heart of this claim, plaintiff alleges: "Defendants, FRYSON and CPS intentionally harassed and blackmailed Plaintiff as described herein, therefore depriving Plaintiff of his Fourteenth Amendment right to Equal Protection as provided by the United States Constitution." (Second Am. Compl. ¶ 37.) The court previously dismissed plaintiff's equal protection claim without prejudice, and the County now moves to dismiss plaintiff's equal protection claim with prejudice because plaintiff has again failed to allege facts supporting a plausible equal protection claim. The undersigned recommends that this claim be dismissed with prejudice because plaintiff has not alleged facts that state a plausible equal protection claim.

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and quotation marks omitted); see also Enquist v. Ore. Dep't of Agric., 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others.") (citation and quotation marks omitted). The court must first identify the defendant's classification of groups, and the "groups must be comprised of similarly situated persons so that

the factor motivating the alleged discrimination can be identified." Thornton, 425 F.3d at 1166-67.  Additionally, a plaintiff may assert what has been called a "class of one" equal protection claim, which may generally lie where an individual has been irrationally singled out for discrimination by the government.  See Enquist, 553 U.S. at 601 (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one'"); accord Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).  To succeed on a "class of one" claim, a plaintiff must demonstrate that the government intentionally treated the plaintiff differently than other similarly situated people and without a rational basis for doing so.  See Gerhart v. Lake County, Mont., 637 F.3d 1013, 1021 (9th Cir. 2011).

As the County argues, plaintiff's Second Amended Complaint does not allege any facts suggesting that plaintiff was either part of a class of persons intentionally singled out by the government for discriminatory treatment, or that the government intentionally treated plaintiff differently than similarly situated people without a rational basis in support of a "class of one" claim.  Accordingly, the undersigned recommends that plaintiff's plaintiff's equal protection claim be dismissed.

The undersigned recommends that the dismissal of plaintiff's equal protection claim be with prejudice because plaintiff was previously notified of the defects in his equal protection claim and provided with the appropriate legal standards, yet failed to materially amend his complaint to state an equal protection claim.  The undersigned finds the arguments raised in plaintiff's opposition brief unpersuasive such that leave to amend should not be granted.  Plaintiff first appears to argue that his equal protection claim should proceed because he was discriminated against on the basis of his gender.  He contends that men are peculiarly susceptible to allegations of child abuse by Yuba CPS.  Yet plaintiff has offered no facts in either his Second Amended Complaint or his written opposition suggesting that the County or Yuba CPS engaged

11

in class-based discrimination against men. Indeed, as the County notes, plaintiff's argument in favor of a "class of one" claim contradicts plaintiff's purported class-based claim—plaintiff argues that he was treated differently than similarly situated men. Plaintiff's second argument in his opposition brief is that plaintiff, as a "class of one," was treated differently than other men without a rational basis for doing so. However, again, plaintiff has not raised any facts suggesting that he was singled out by the County to be treated differently than similarly situated men. Accordingly, plaintiff's opposition brief provides no basis for granting plaintiff leave to amend his Second Amended Complaint, and the undersigned recommends that plaintiff's equal protection claim be dismissed with prejudice.

           3.        <u>Municipal Liability Based on a Policy, Custom, or Practice, Etc.</u>

If the district judge assigned to this matter adopts the above-stated recommendations, the only surviving aspect of plaintiff's Section 1983 claim would be plaintiff's Fourteenth Amendment due process claim. The County seeks dismissal of plaintiff's Section 1983 claims on the ground that plaintiff has not adequately alleged a municipal claim under the remaining requirements of <u>Monell</u>. (<u>See</u> County's Memo. at 7-9.) In short, the County contends that plaintiff has not satisfactorily alleged a policy, custom, or practice of the County implemented by persons having policy-making authority so as to substantiate a municipal Section 1983 claim.

In conclusory fashion plaintiff uses legal buzzwords to suggest that Fryson was a policymaker or was delegated policy making authority. For example, plaintiff alleges that: (1) Yuba CPS "delegated its final policy-making authority" to Fryson (Second Am. Compl. ¶ 12); (2) Yuba CPS "adopted and ratified" each of Fryson's decisions "as its own policies, customs, practices or decisions, as if the same had been promulgated directly by CPS" (<u>id.</u> ¶¶ 12, 31); (3) Fryson acted as an official policy maker for Yuba CPS or was vested with policy-making authority (<u>id.</u> ¶¶ 13, 29-30); and (4) Fryson's conduct "was consistent with the unconstitutional policies, customs and practices set forth by CPS" (<u>id.</u> ¶ 31). However, plaintiff has not alleged

12

facts supporting that the County or Yuba CPS had a policy, practice, or custom of blackmailing men or delegating authority to its social workers to do the same. Accordingly, the undersigned recommends that plaintiff's Monell claim be dismissed with prejudice to the extent that it is premised on the above-stated theories.

However, the undersigned recommends that plaintiff's Monell claim proceed to the extent that it is premised on a theory of the County's or Yuba CPS's failure to supervise its employees who have been placed on administrative leave for misconduct. There is no doubt that plaintiff's contentions suffer from ambiguity on this point. Although plaintiff's Second Amended Complaint alleges that the County failed to supervise its employee who was placed on leave (see Second Am. Compl. ¶¶ 27, 32-33), his opposition brief asserts that the County's decision to place Fryson on administrative leave led to the alleged constitutional violation (Pl.'s Opp'n at 7-8, Dkt. No. 32). At this early stage, however, plaintiff has alleged enough facts in his Second Amended Complaint to permit his Monell claim to proceed to the extent that it is premised on the County's or Yuba CPS's failure to supervise employees who are placed on administrative leave.

B.  The Court Should Continue to Exercise Supplemental Jurisdiction

The County suggests that if the court dismisses all of plaintiff's federal claims alleged against the County, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). (County's Memo. at 9-10.) Even if the court dismissed plaintiff's federal claims against the County, the court would nonetheless continue to exercise federal subject matter jurisdiction over plaintiff's claims against Fryson. It would be inefficient and unfair to force plaintiff to litigate his claims in two different forums. Accordingly, the undersigned recommends that as a matter of economy, convenience, and fairness, the court continue to exercise supplemental jurisdiction over plaintiff's state law against the County even if all of plaintiff's federal claims alleged against the County are dismissed. See, e.g., City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172-73 (1997) ("[W]e have

indicated that 'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.") (modification in original) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)).

### C. Plaintiff's Claims of Negligent Infliction of Emotional Distress, Fraud, and Negligent Supervision, Hiring, and Retention Are Subject to Dismissal to the Extent They Are Premised On a Theory of Direct Liability Against the County

The County moves to dismiss plaintiff's state law claims for negligent supervision, hiring, and retention, negligent infliction of emotional distress, and fraud to the extent that plaintiff asserts those claims directly against the County. (County's Memo. at 10-12.) In short, the County again seeks dismissal of such direct liability claims because plaintiff has not stated a statutory basis for such direct liability.[7] The court previously: (1) dismissed plaintiff's claims for negligent supervision, hiring, and retention, negligent infliction of emotional distress, and fraud without prejudice to the extent that such claims were alleged against the County on a theory of direct liability; (2) granted plaintiff leave to assert a statutory basis for plaintiff's direct liability claims against the County; but (3) permitted plaintiff's claims of negligent infliction of emotional distress and fraud to proceed against the County as pled to the extent that such claims were premised on a respondeat superior theory of vicarious liability because plaintiff cited a valid statutory basis to assert such claims. (See Order & Findings & Recommendations, June 15, 2011, at 17-20, adopted by Order, Aug. 11, 2011, at 2.)

As with his prior complaint, plaintiff's Second Amended Complaint does not identify a California statute that authorizes plaintiff to assert claims for negligent supervision, hiring, and retention, negligent infliction of emotional distress, and fraud directly against the County. Plaintiff failed to identify such a statutory authorization despite the court's plain

---

[7] As the undersigned previously explained in greater detail, the California Government Claims Act immunizes public entities such as the County from tort liability in all cases except those where liability is explicitly created by a particular statute. Cal. Gov't Code § 815(a); see also Hoff v. Vacaville Unified Sch. Dist., 19 Cal. 4th 925, 932, 968 P.2d 522, 526 (1998).

instruction to him to do so.  Accordingly, the undersigned recommends that plaintiff's third, fourth, and sixth claims for relief be dismissed insofar as those claims are based on a theory of direct liability against the County.  However, as the court previously concluded, plaintiff's claims for negligent infliction of emotional distress and fraud shall proceed against the County as pled to the extent that such claims are premised on a respondeat superior theory of vicarious liability.

In regards to the nature of the dismissal of plaintiff's direct liability claims for negligent supervision, hiring, and retention, negligent infliction of emotional distress, and fraud, the County oddly seeks dismissal of such claims *without* prejudice despite plaintiff's apparent inability to state claims on which relief can be granted.  (County's Memo. at 10 (stating that "the direct liability claims against the COUNTY should be dismissed without prejudice"); see also id. at 12 (arguing that plaintiff's claim for negligent supervision, hiring, and retention "should be dismissed without prejudice").)  Accordingly, the undersigned recommends that such direct liability claims be dismissed without prejudice, but that plaintiff not be granted leave to amend his Second Amended Complaint to raise such claims in this action.

D. California Government Code § 818.8 Does Not Bar Plaintiff's Claim of Fraud Against the County

The County next contends that plaintiff may not attempt to hold it liable for Fryson's alleged fraudulent misrepresentations at the heart of this action because such vicarious liability is barred by California Government Code § 818.8.[8]  (County's Memo. at 12-13.)  The undersigned previously rejected the County's argument premised on the immunity provided by California Government Code § 818.8 in addressing the County's motion to dismiss plaintiff's original complaint.  (Order & Findings & Recommendations, June 15, 2011, at 20-22.)  The County objected to that portion of the findings and recommendations (Dkt. No. 23), and the

---

[8] California Government Code § 818.8 provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

district judge found the County's arguments unpersuasive after conducting a de novo review (see Order, Aug. 11, 2011, at 2). Despite the fact that the court twice-denied the County's attempts to obtain dismissal of plaintiff's fraud claim on the basis of California Government Code § 818.8, the County *again* argues that California Government Code § 818.8 bars plaintiff's fraud claim against the County. The County's present argument is not materially different than the argument it made in its objections to the prior findings and recommendations, and plaintiff's Second Amended Complaint provides no additional persuasiveness to the County's argument. Accordingly, the undersigned recommends that the County's motion to dismiss be summarily denied to the extent that the County seeks dismissal of plaintiff's fraud claim on the basis of the immunity conferred by California Government Code § 818.8.

  E.  <u>Plaintiff's Bane Act Claim Was Previously Dismissed With Prejudice</u>

    Next, the County moves to dismiss plaintiff's claim brought pursuant to the Tom Bane Civil Rights Act, California Civil Code § 52.1. (County's Memo. at 13-14.) As the County argues, the court previously dismissed plaintiff's Bane Act claim with prejudice. (Order & Findings & Recommendations, June 15, 2011, at 22-24, <u>adopted by</u> Order, Aug. 11, 2011, at 2-3.) Nevertheless, plaintiff pled an identical Bane Act claim in his Second Amended Complaint. (<u>Compare</u> Compl. ¶¶ 82-90, <u>with</u> Second Am. Compl. ¶¶ 80-88.) The undersigned recommends that plaintiff's Bane Act be dismissed with prejudice because the court already dismissed that claim with prejudice, and plaintiff was not given leave to re-allege a Bane Act claim in the Second Amended Complaint.[9]

  F.  <u>Plaintiff's Claim or Prayer for Punitive Damages Should Be Dismissed</u>

    Finally, the County moves to dismiss plaintiff's claim or request for relief in the form of punitive damages on the grounds that: (1) punitive damages are not available in connection with Section 1983 claims asserted against public entities; and (2) California

---

[9] Alternatively, the court could strike such claims pursuant to Federal Rule of Civil Procedure 12(f)(1).

Government Code § 818 bars awards of punitive damages against public entities.  (County's Memo. at 14.)  The undersigned recommends that the County's motion to dismiss plaintiff's request for punitive damages be granted.

The County correctly argues that a plaintiff may not recover punitive damages from a municipality on a claim brought pursuant to 42 U.S.C. § 1983.  The Supreme Court has squarely held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); see also Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79 (1997); accord Bell v. Clackamas County, 341 F.3d 858, 868 n.4 (9th Cir. 2003).  The County also correctly contends that, as a general matter, the California Government Code bars punitive damages awards against public entities.  See Cal. Gov't Code § 818; see also Westlands Water Dist. v. Amoco Chem. Co., 953 F.2d 1109, 1113 (9th Cir. 1991) ("California Government Code § 818 bars any award of punitive damages against a public entity.").  Accordingly, the undersigned recommends that the County's motion to dismiss be granted, and that plaintiff's claim or prayer for punitive damages be dismissed with prejudice as to the County.

IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that defendant County of Yuba's motion for a more definite statement is denied.

It is FURTHER RECOMMENDED that:

1.   Defendant County of Yuba's motion to dismiss (Dkt. No. 31) be granted in part and denied in part.  Specifically, it is recommended that:

a.   Plaintiff's first claim for relief, alleging a violation of plaintiff's due process rights pursuant to 42 U.S.C. § 1983, be dismissed with prejudice to the extent it alleges a violation of plaintiff's Fourth Amendment and Fifth Amendment due process rights, but proceed to the extent it alleges a violation of plaintiff's Fourteenth Amendment due process rights.

    b. Plaintiff's second claim for relief, alleging a violation of plaintiff's equal protection rights pursuant to 42 U.S.C. § 1983, be dismissed with prejudice.

    c. Plaintiff's third claim for relief, alleging a claim of negligent supervision, hiring, and retention, be dismissed without prejudice, but that plaintiff not be granted leave to further amend his complaint to assert such a claim in this action.

    d. Plaintiff's fourth claim for relief, alleging a claim of fraud, be dismissed without prejudice to the extent that it is a claim for direct liability against the County, but that plaintiff not be granted further leave to amend his complaint to assert such a direct liability claim against the County. *However*, plaintiff's fraud claim shall proceed against the County to the extent it asserts a claim premised on a respondeat superior theory of vicarious liability.

    e. Plaintiff's sixth claim for relief, alleging a claim of negligent infliction of emotional distress, be dismissed without prejudice to the extent that it is a claim for direct liability against the County, but that plaintiff not be granted further leave to amend his complaint to assert such a direct liability claim against the County. *However*, this claim shall proceed against the County as pled to the extent it asserts a claim premised on a respondeat superior theory of vicarious liability.

    f. Plaintiff's seventh claim for relief, alleging a violation of California Civil Code § 52.1, be again dismissed with prejudice as to the County.

    g. Plaintiff's claim or request for punitive damages be dismissed with prejudice as to the County.

    2. The County be directed to file an answer to the Second Amended Complaint, as narrowed by the court, within 14 days of the entry of an order by the district judge resolving these findings and recommendations.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

       IT IS SO ORDERED AND RECOMMENDED.

DATED:  December 30, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE