UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER LINDSAY,                    No.  CIV. S-10-2842 LKK/KJN

        Plaintiff,

   v.                                **ORDER**

YOLANDA FRYSON, et al.,

        Defendants.

    Defendant Yolanda Fryson, while on paid leave as a social worker for Yuba County Child Protective Services ("CPS"), tried to extort money from plaintiff.  Fryson falsely claimed that she had a CPS file showing that plaintiff had sexually molested a 17-year-old girl.  Plaintiff ultimately participated in a sting operation which resulted in Fryson's arrest.

    Plaintiff has sued Fryson and Yuba County alleging violations of his federal Due Process rights, and asserting several state tort claims.  For the reasons set forth below, Yuba County's motion for summary judgment will be granted.

////

# I. UNDISPUTED FACTS

Defendant Yolanda Fryson was hired as a social worker for Yuba County CPS in March 2002.  Plaintiff's Matrix of Disputed Facts ("Facts") (ECF No. 70-1) ¶ 1.[1]  After conducting a criminal background check on Fryson, Yuba County issued her a badge. Facts ¶¶ 2-5.  On August 15, 2005, Fryson reported that her badge was missing or stolen.  Facts ¶ 6.  Fryson reported the loss or theft to the Sheriff's Department, and Yuba County issued her a replacement badge.  Facts ¶¶ 7-9.

On June 3, 2008, the Placer County Sheriff's Department came to Fryson's workplace and arrested her, apparently for writing bad checks.  Facts ¶ 10.  On June 5, 2008, the first day Fryson returned to her office after her arrest, Yuba County put Fryson on paid administrative leave.  Facts ¶ 13.  The County stripped Fryson of all her duties, and she relinquished her replacement County badge, keys, computers and communications devices.  Facts ¶ 14.[2]  On June 10, 2008, the County began its administrative

---

[1] Plaintiff's "Matrix of Disputed Facts" is plaintiff's response to Yuba County's statement of "Undisputed Material Facts" (ECF No. 68-2).  The facts cited here are those material facts asserted by defendant which plaintiff has not genuinely disputed. Plaintiff has not set forth any undisputed facts of his own.

[2] Plaintiff attempts to put this fact into dispute by asserting: "This is false.  The County's given admission was that Fryson had TWO badges and only turned in one – with the County on notice of Fryson's lawlessness [sic] misconduct.  (Decl. of Tony Roach at para 4-5)."  However plaintiff's statement does not place this fact genuinely in dispute.  Plaintiff's cited declaration does not indicate that the county ever admitted that Fryson had two badges at the time.  Roach's Declaration says that the second badge was issued as a replacement badge for the first one, which had been reported lost or stolen.  ECF No. 68-5 ¶¶ 4-5.  He does not say that Fryson was in possession of two badges, nor does he state that the County knew or believed that Fryson had two

investigation of Fryson.  Facts ¶ 15.

On October 21, 2008, Fryson – while she was still on paid administrative leave – called plaintiff, and told him, falsely, that a report had come across her desk accusing him of molesting a 17-year-old girl.  Facts ¶ 18.[3]  Fryson did not choose plaintiff completely out of the blue.  She had some acquaintance with people plaintiff knew, including Wendy Leveron, his girlfriend, and Beverly Avery, a friend of Leveron's.  Lindsay Depo. at 14-17.  After this phone call, plaintiff called Leveron and Avery and discussed Fryson's allegations with them.  Facts ¶ 20; Lindsay Depo. at 35-38. At that time, Avery told plaintiff that Fryson worked for CPS.  Facts ¶ 20.

Later that day, plaintiff and Fryson talked again by phone. Facts ¶ 21.  Fryson refused to disclose the (non-existent) reporting party, but indicated that she might be able to make the whole mess "go away."  Facts ¶ 21.[4]  Even later that day,

---

badges.  However, it is a fair inference from later events that Fryson was in fact still in possession of the original badge, even though she had reported it lost or stolen.

[3] Plaintiff attempts to put this fact into dispute by asserting: "This fact is disputed.  Plaintiff contacted Yuba after being told by Fryson that there was a file – But Yuba did not tell Plaintiff that as contended.  They only confirmed that Fryson was a CPS Officer.  (Lindsay Depo. P. 76)."  Plaintiff's statement, once again, does not put this fact genuinely in dispute.  Nothing on the cited deposition page (or anywhere else) disputes defendant's asserted fact about this phone call.  Indeed, the cited deposition page has nothing to do with Fryson's phone call to plaintiff.  The cited deposition page only establishes that plaintiff called CPS, asked to speak to Fryson, and was told "that she's not here."  Lindsay Depo. at 76.

[4] Plaintiff attempts to put this fact in dispute by asserting: "Disputed.  The day after Fryson contacted Plaintiff, Plaintiff contacted Yuba.  (Lindsay Depo. p. 76)."  Plaintiff's statement,

1    plaintiff and Fryson talked again by phone, and agreed to meet at

2    a restaurant.  Facts ¶ 22.  On the same day Fryson, plaintiff,

3    Avery and Leveron met at the restaurant.  Facts ¶ 23.  Fryson

4    told plaintiff that she had taken the file and hidden it, that

5    she knew plaintiff was innocent, that she didn't want bad things

6    to happen to a good person, and that she may have ways to make

7    this thing "go away."  Facts ¶ 23.

8         The next day, plaintiff and Fryson again spoke by telephone,

9    and agreed to meet at a coffee shop.  Facts ¶ 24.  In the parking

10   lot of the coffee shop, Fryson showed plaintiff a badge.  Facts

11   ¶ 25.  Although plaintiff already believed that Fryson worked for

12   Yuba County or possibly Yuba County CPS in some type of law

13   enforcement capacity, seeing the badge made him realize that this

14   was real, and he was facing real trouble.  Lindsay Depo. at 68.

15   Fryson told plaintiff that she would probably turn the file over

16   to her supervisor, and that plaintiff would certainly be

17   arrested, either at home or at his workplace.  Lindsay Depo. at

18   68 & 72.

19        Later, plaintiff contacted an attorney.  Facts ¶ 30.  Later

20   still, plaintiff tried to reach Fryson at Yuba County CPS.  Facts

21   ¶ 31.  Fryson of course was not there, since she was still on

22   paid administrative leave while the check kiting incident was

23   being investigated.  The CPS staff member who answered the

24   _____

25   yet again, does not put this fact genuinely in dispute.  Nothing
     on the cited deposition page (or anywhere else) disputes
26   defendant's asserted facts regarding the phone call.  Indeed, the
     cited deposition page has nothing to do with Fryson's phone call
27   to plaintiff.

28

                                   4

1    telephone was, unsurprisingly, evasive about Fryson.  Plaintiff

2    was told that Fryson was not there, he could not leave a message,

3    CPS could not answer his question about when Fryson would return,

4    and CPS could not explain its answers.  Lindsay Depo. at 76-77.

5        Plaintiff then spoke with Fryson's supervisor.  Facts ¶¶ 16

6    & 31.  Plaintiff told the supervisor about his conversations with

7    Fryson, and her allegation about having a file about him.  Id.

8    ¶¶ 17 & 31.  Within 24 hours, the supervisor called plaintiff

9    back and told him that there was no file about him, nor any

10   charges pending against him.  Id. ¶¶ 16 & 31.[5]

11       Soon after, plaintiff and his lawyer met with Yuba County

12   counsel, and advised the County of Fryson's actions.  Facts ¶ 32.

13   After that meeting, plaintiff agreed to cooperate with the

14   Sheriff's department in their investigation of, and ultimately a

15   sting operation against, Fryson.  Facts ¶ 33-34.  Fryson was

16   arrested.  Facts ¶ 35.[6]

---

[5] Plaintiff attempts to put this fact in dispute by asserting:
"This fact is disputed.  Plaintiff contacted Yuba after being
told by Fryson that there was a file – But Yuba did not tell
Plaintiff that as contended.  They only confirmed that Fryson was
a CPS Officer.  (Lindsay Depo. P. 76)."  Once again, nothing on
the cited deposition page (or anywhere else) put's defendant's
asserted fact genuinely in dispute.  The cited deposition page
only establishes that plaintiff called CPS, asked to speak to
Fryson, and was told "that she's not here."  Lindsay Depo. at 76.
It is important to realize that plaintiff does not provide a
sworn statement disputing this fact, which indeed would create an
issue of fact.  Instead, he only provides an unverified
statement, which is insufficient.  This observation applies to a
number of unverified "disputes", and will not be repeated each
time.

[6] It appears, according to a press release from the Placer County
District Attorney, that Fryson was later tried and convicted of
check fraud, forgery, attempted extortion and accepting a bribe.
http://www.placer.ca.gov/departments/da/news/2010/december/newsit

**II. PROCEDURAL HISTORY**

**A. Original Complaint.**

Plaintiff, originally proceeding <u>pro se</u>, sued Fryson and Yuba County.  ECF No. 1.  Plaintiff asserted that his federal Due Process rights were violated, citing the Fourteenth Amendment to the U.S. Constitution.[7]  Specifically, he alleged that defendants' conduct deprived him of his rights to "liberty" and "familial association."  ECF No. 1 ¶ 35.  Adopting the Magistrate Judge's recommendation, this court dismissed this claim without prejudice.  ECF No. 25 ¶ 2(a).

Plaintiff also alleged a common law state claim directly against the County for negligent hiring, supervision and retention, negligent infliction of emotional distress and fraud. Because state common law claims may not be pled directly against the County without an authorizing statute, this court, adopting the Magistrate Judge's recommendation, dismissed these claims without prejudice so that plaintiff could identify the statute or statutes under which he was proceeding.[8]  ECF No. 25 ¶¶ 2(c), (d) & (e).  However, since plaintiff also asserted that the County

---

em,-d-,fryson2

[7] Plaintiff also asserted "Due Process" claims, under the Fourth and Fifth Amendments, and an Equal Protection claim.  This court adopted the Magistrate Judge's recommendation and dismissed these claims with prejudice.  ECF No. 25 ¶ 2(a) & (b).

[8] "[T]he California Government Claims Act immunizes public entities such as the County from tort liability in all cases except those where liability is explicitly created by a particular statute.  Cal. Gov't Code § 815(a); <u>see also</u> <u>Hoff v. Vacaville Unified Sch. Dist.</u>, 19 Cal. 4th 925, 932 (1998)." Order of January 3, 2012, ECF No. 35 14 n.7.

was vicariously liable for the negligent infliction and the fraud claims, pursuant to Cal. Civ. Code § 815.2, this court allowed those claims to proceed, as pled.[9]  Id. ¶¶ 2(d) & (e).[10]

Finally, plaintiff alleged a violation of Cal. Civ. Code § 52.1 against the County.  Because the claim did not allege that Fryson threatened any violence against plaintiff, the court adopted the Magistrate Judge's recommendation and dismissed the claim with prejudice.  Id. ¶ 2(f).

**B. Second Amended Complaint.[11]**

Still proceeding pro se, plaintiff filed a Second Amended Complaint.  ECF No. 29.  Declining to adopt the Magistrate Judge's recommendation, this court denied the County's motion to dismiss the re-pled Fourteenth Amendment Due Process claim.  This court found that the Complaint sufficiently alleged that the County had a policy of permitting employees on leave to retain their badges, and that the County failed to properly supervise employees on leave.  ECF No. 39 at 3-4.

Plaintiff re-alleged his common law state claim directly

---

[9] "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2(a).

[10] The Magistrate Judge recommended that the court reject the County's assertion that Cal. Govt. Code § 818.8 rendered it immune from fraud claims.  This court, by adopting the Magistrate Judge's Findings and Recommendations, rejected the County's assertion.

[11] Plaintiff filed a First Amended Complaint out of turn, and it has been disregarded.

1   against the County, for negligent hiring, supervision and

2   retention, negligent infliction of emotional distress, and fraud.

3   Ignoring the court's order previously dismissing these claim

4   without prejudice, plaintiff again failed to identify any

5   statutory basis for these claims.  Accordingly, this court

6   dismissed the claims with prejudice.  ECF No. 45 ¶ 3.  However,

7   since plaintiff identified a statutory basis for vicarious

8   liability of the negligent infliction and fraud claims, namely

9   Cal. Gov't Code § 815.2(a), the court permitted those claims to

10  proceed.[12]

11      **C. Third Amended Complaint.**

12      Still <u>pro se</u>, plaintiff filed his Third Amended Complaint.

13  ECF No. 40.  This Complaint again alleges the Fourteenth

14  Amendment Due Process violations which the court previously found

15  to be sufficient to survive the earlier dismissal motions.

16      Once again ignoring the prior order of this court, plaintiff

17  re-pled his negligent hiring, supervision and retention,

18  negligent infliction of emotional distress, and fraud claims

19  directly against the County, without identify any statutory bases

20  for them.  These claims will be summarily dismissed.  However,

21  plaintiff properly re-pled his vicarious liability claims for

22  negligent infliction of emotional distress and fraud, citing Cal.

23  Gov't Code § 815.2(a).

24  ////

25  _____

26  [12] Adopting plaintiff's strategy of ignoring this court's order,
    the County renewed its argument that it was immune from the fraud

27  charge.  The Magistrate Judge recommended that the assertion be
    summarily denied, and this court adopted that recommendation.

28

**D. Motion for Summary Judgment.**

The County moves for summary judgment on the Section 1983 Claim solely on the grounds that plaintiff has failed to show that Yuba County has any custom, policy or practice that led to plaintiff's alleged harm, and that Fryson herself was not a policy-maker and exercised no policy-making authority of the County.

The County moves for summary judgment on the common-law claims on the grounds that the statute permitting vicarious liability – the only way these claims can be asserted against the County – requires that the employee be acting within the scope of her employment.  Yuba County asserts that the undisputed facts show that Fryson was not acting within the scope of her employment.[13]

**III. STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

---

[13] Continuing to adopt plaintiff's strategy, the County renews its twice-rejected argument that it is immune from the fraud claim under Cal. Gov't Code § 818.8.  That argument is summarily rejected.

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact") (citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)).

A wrinkle arises when the non-moving party will bear the burden of proof at trial. In that case, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387.

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Oracle Corp., 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine

1  issues for trial"). In doing so, the non-moving party may not

2  rely upon the denials of its pleadings, but must tender evidence

3  of specific facts in the form of affidavits and/or other

4  admissible materials in support of its contention that the

5  dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

6      "In evaluating the evidence to determine whether there is a

7  genuine issue of fact," the court draws "all reasonable

8  inferences supported by the evidence in favor of the non-moving

9  party." Walls, 653 F.3d at 966. Because the court only

10 considers inferences "supported by the evidence," it is the non-

11 moving party's obligation to produce a factual predicate as a

12 basis for such inferences. See Richards v. Nielsen Freight

13 Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party

14 "must do more than simply show that there is some metaphysical

15 doubt as to the material facts .... Where the record taken as a

16 whole could not lead a rational trier of fact to find for the

17 nonmoving party, there is no 'genuine issue for trial.'"

18 Matsushita, 475 U.S. at 586-87 (citations omitted).

**IV. ANALYSIS**

20    **A. Claim One: Section 1983.**

21

22    Yuba County may be liable under Section 1983 if the County

23 itself "'subjects' a person to a deprivation of rights or

24 'causes' a person 'to be subjected' to such deprivation."

25 Connick v. Thompson, 563 U.S. ___, 131 S. Ct. 1350, 1359-60

26 (2011).[14] Under § 1983, the County is responsible only for its

27 [14] Citing Monell v. New York City Dept. of Social Servs., 436 U.S.
   658, 692 (1978).

28

own "illegal acts," and cannot be held vicariously liable for the actions of its employees.  Id.[15]

Since plaintiff seeks to impose liability on the County under § 1983, he "must prove that 'action pursuant to official municipal policy'" caused his injury.  Id.  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Id.[16] Plaintiff identifies three policies as the basis for his Monell claim against Yuba County, namely, that (1) Yuba County "hired a person with a known criminal record," (2) allowed Fryson "to keep her badge while on administrative leave," and (3) allowed Fryson to have "virtually no supervision while on administrative leave." Plaintiff's Response to Special Interrogatories No. 3, ECF No. 68-3; Facts ¶ 43.[17]

### 1. Hiring persons with a known criminal history.

Reading his Interrogatory response in the light most favorable to him, plaintiff asserts that Yuba County has a policy of hiring persons with known criminal histories.  At trial, he will have the burden of establishing this fact.

---

[15] Citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986), City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), and Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997).

[16] Citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168 (1970).

[17] Plaintiff also alleges in the Complaint that Fryson was a policy-maker.  Complaint ¶ 13.  However, he does not offer any evidence to dispute the County's evidentiary showing that Fryson was not a policy-maker.  See Facts ¶¶ 44-45.  The court concludes that it is undisputed that Fryson was not a policy-maker.

1      In his complaint, plaintiff alleges that "According to a

2  memorandum filed by DA Stephanie McCumber, Fryson was disciplined

3  in 2008 for preparing false time sheets and mileage as a Child

4  Protective Service worker, arrested in 2003 for check fraud in

5  Florida and convicted in 1990 of grand theft in Los Angeles

6  County."  Complaint ¶ 27.  In his opposition to Yuba County's

7  summary judgment motion, he points to his own deposition

8  testimony, which is that the DA "had alerted me of that, that

9  there was a prior conviction."  See Lindsay Depo. at 98.

10      However, both of these statements are plainly hearsay under

11  Fed. R. Evid. 801(c).  Both assertions rely upon the truthfulness

12  of McCumber's alleged statement – whether in the alleged

13  memorandum, or directly to plaintiff – that Fryson already had a

14  conviction before Yuba County hired her.  Plaintiff has not shown

15  that these alleged statements can be presented in admissible form

16  at trial.  There is no declaration from the DA who allegedly

17  wrote the memorandum or made the statement and no deposition of

18  that DA, plaintiff has not offered the memorandum itself, and

19  plaintiff has not offered any Interrogatory Answer or Admission

20  of this fact.

21      Even if this memorandum exists and McCumber made the

22  asserted statement, and even if plaintiff could somehow get this

23  memorandum or statement into admissible form, and it could be

24  considered for the truth of the matter asserted, plaintiff still

25  has to show that it is a "policy" of Yuba County to hire people

26  with criminal convictions (or at least, not to screen them

27  properly, or something along those lines).  Plaintiff has done

28

nothing to show that there is such a policy.[18]   He has offered no

deposition testimony of any County employee, no employment

manual, no memoranda, no declarations.   In short, he has not

offered any evidence to prove this fact, nor given any hint of

how he could possibly prove the existence of such a policy at

trial.[19]

**2. Fryson keeps her badge while on leave.**

Plaintiff alleges, but points to no evidence at all, that

the County had a policy of permitting its employees to keep their

badges while on paid administrative leave.   The only evidence

plaintiff points to is the Declaration of Roach at ¶¶ 4-5.   That

testimony has nothing to do with the disposition of badges while

an employee is on leave.   Rather, that testimony is that Fryson

was issued Badge No. 49, reported it lost or stolen, and

thereupon was issued Badge No. 1 as a <u>replacement</u> badge.   ECF

No. 68-5 ¶¶ 4-5.

There is no evidence anywhere that the County has a policy

of permitting employees on paid administrative leave (or any

other kind of leave), to keep their badges.

[18] At oral argument in this matter, plaintiff's counsel argued
that the County should have known better than to hire someone
with convictions for crimes involving moral turpitude.   However,
she offered no admissible evidence, nor any indication that such
evidence could be offered in admissible form, that the County
hired Fryson with such prior convictions, or that it had a policy
of hiring such persons.

[19] Meanwhile, the County has offered declarations which they say
show that it has no such policy.   In fact, the declarations only
show that people convicted of "certain" offenses cannot be hired,
without identifying those offenses, or if they include the one(s)
allegedly applicable to Fryson.   But it matters not, because this
is plaintiff's burden, not the County's.

1  To the contrary, the County has offered its written policy

2  on "Paid Administrative Leave," which states that during the time

3  the employee is on leave, she "shall immediately relinquish [her]

4  County Department-issued identification badge."  ECF No. 68-3.

5  Moreover, the County offers the Declaration of Erich Runge, which

6  states that when Fryson was placed on paid administrative leaved,

7  she did relinquish her Badge No. 1, the replacement badge.  ECF

8  No. 68-6 ¶¶ 5-6.  As far as the evidence shows, this was the only

9  badge the County knew Fryson had possession of, as she had

10  reported the original (Badge No. 45) lost or stolen.

11  **3. Supervision of Fryson.**

12  [A] constitutional violation may arise from
training or supervision where the training or
13  supervision is sufficiently inadequate as to
constitute "deliberate indifference" to the
14  righ[t]s of persons with whom the police come
into contact.  City of Canton v. Harris, 489
15  U.S. 378 (1989).  Canton dealt specifically
with inadequate training.  We see no
16  principled reason to apply a different
standard to inadequate supervision.

17

18  Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989).

19  "Deliberate indifference," meanwhile,

20  is a stringent standard of fault, requiring
proof that a municipal actor disregarded a
21  known or obvious consequence of his action.

22  Connick v. Thompson, 131 S. Ct. at 1360 (emphasis added).[20]

23  Plaintiff asserts that the County failed to supervise Fryson

24  while she was on leave, because she was only required to call in

25  once per day.  Plaintiff does not make any connection between

26

27  [20] Citing Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397
(1997).

28

1  this level of supervision and the harm she caused, nor does he

2  hint at what supervision could have prevented Fryson from

3  attempting extortion.  Plaintiff does not show how a once-a-day

4  call-in by Fryson was insufficient supervision.  It is not

5  "obvious" that requiring an employee on leave to call in once per

6  day would lead to that employee's attempting the crime of

7  extortion.  Nor is it obvious how a different policy – calling in

8  twice per day, disconnecting Fryson's home phone and cell phone,

9  requiring her to sit in a supervisor's office all day, for

10 example – would prevent that employee from attempting the crime

11 of extortion.

12      Even the strictest supervision – requiring Fryson to sit in

13 a supervisor's office during the entire work day – leaves her

14 free to do exactly what she did, namely, attempt to extort money

15 from plaintiff during the hours when she was not at the office.

16            **4. Conclusion.**

17      Plaintiff has done nothing to oppose the County's summary

18 judgment motion.  His objections to undisputed factual assertions

19 by the County is to say "disputed," and then to cite to testimony

20 that does not even relate to the fact allegedly being disputed.

21 Plaintiff has put forward no evidence to show that the County had

22 a policy that led to the crime committed by Fryson, nor that its

23 supervision was deliberately indifferent to the risk that its

24 employee would commit this crime.

25       **B. Claims Two, Three and Six:[21] State Vicarious Liability
           Claims for Negligent Supervision, Fraud, and Negligent**

26

27 [21]  Claim Four is asserted only against Fryson.  There is no Claim
       Five in the Complaint.

28

**Infliction of Emotional Distress.**

> Vicarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior.  As the Act provides, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity <u>within the scope of his employment</u> if the act or omission would ... have given rise to a cause of action against that employee," unless "the employee is immune from liability."

Zelig v. County of Los Angeles, 27 Cal. 4th 1112, 1128 (2002) (emphasis added and citation omitted), citing Cal. Govt. Code, § 815.2(a) & (b).  The statute provides:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Yuba County argues that Fryson's conduct was not within the scope of her employment, and therefore the County cannot be liable for it.  Plaintiff counters that whether her conduct was within the scope of her employment is a question of fact.  Cal. Govt. Code § 815.2(a).  At trial, it would be plaintiff's burden to prove "that the employee's tortious conduct was committed within the scope of employment."  Mary M. v. City of Los Angeles, 54 Cal.3d 202, 209 (1991); Perry v. County of Fresno, 215 Cal. App. 4th 94, 101 (5th Dist. 2013) ("The burden is on the plaintiff to prove that the employee's tortious conduct was committed within the scope of employment").

> Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it

17

> becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible."

Id., at 213.  Here, the only fact that plaintiff has offered about the scope of Fryson's employment is that she was a "social worker in the County of Yuba."  Complaint ¶ 4.  Plaintiff has offered no job description, no declaration or deposition testimony, no discovery, no anything that explains what Fryson's job duties were, nor anything from which the court can deduce the scope of her employment.[22]  For example, did her duties include confronting persons suspected of sexual assault on minors (or is that a function left to the police, or some other person within CPS)?  In short, plaintiff has failed to show that he will be able to prove at trial that Fryson's conduct was within the scope of her employment.

In any event, what is undisputed is that at the time the extortion attempt occurred, plaintiff had no job duties other than to call in to the office every day, and to be ready to resume work.  ECF No. 68-3 23 (memo re Paid Administrative Leave).  Whatever her duties may have been before her arrest, while she was on administrative leave, she was "relieved from [her] duties" as a social worker.  Id., 22.  She was stripped of all authority as a social worker, and directed to return all

---

[22] Plaintiff argues in his brief, but offers no evidence, that "Fryson was employed to assess the safety of children involved in circumstances of child abuse and neglect and monitor services relating thereto." ECF No. 70 at p. 4.  He argues from this that faking a report about child abuse was therefore within the scope of her employment.  Id.  He has, however, presented no evidence of what her job duties are, and no one has offered any evidence of those duties.

1   property related to her job, including her badge.  Id.  She was

2   banned from all County facilities other than those open to the

3   general public.  Id.

4        This case is complicated further by the fact that Fryson's

5   actions were criminal.  The California Supreme Court, in John R.

6   v. Oakland Unified School Dist., 48 Cal.3d 438 (1989), "applied

7   'the historical and perhaps still prevailing point of view' that

8   an employer could not be held vicariously liable for the criminal

9   act of an employee committed in furtherance of the employee's

10  personal purpose."  Thorn v. City of Glendale, 28 Cal. App.

11  4th 1379, 1384 (2nd Dist. 1994).  Although the Supreme Court

12  later decided Mary M., holding the City liable for a police

13  officer's rape of a citizen, it did not expressly overrule John

14  R.  Thus, Mary M. appears to say that the employer can be

15  vicariously liable for the acts of its police officers while

16  otherwise carrying out their duties.  The California Supreme

17  Court found vicarious liability because of many factors not

18  present here, including the "extraordinary power and authority

19  over its citizenry" that society bestows upon police.  Most

20  important, the police officer was abusing his actual authority

21  over the plaintiff.  The officer raped the plaintiff while

22  otherwise carrying out his actual duties.

23       Here, Fryson was not carrying out her duties.  First, she

24  had no duties, other than to call in to the office every day.

25  Second, even if she had not been on leave, plaintiff has not

26  shown that confronting alleged molesters is within the scope of

27  her employment.

28       Plaintiff has not met his burden to show that he can produce

19

1  any evidence at trial that Fryson was acting within the course

2  and scope of her employment as a social worker when she tried to

3  extort plaintiff.

**V. CONCLUSION**

For the foregoing reasons,

1.   The court summarily **DISMISSES WITH PREJUDICE**
plaintiff's Second (negligent hiring), Third (fraud), and Sixth
(negligent infliction of emotional distress) Claims, to the
extent they are direct claims against the County;

2.   The court **GRANTS** defendant County's motion for
summary judgment on all other claims, and the County is hereby
**DISMISSED** from this case.

**Case Status**

Defendant Fryson, the sole remaining defendant, has answered
the Third Amendment Complaint.  See ECF No. 56 (Answer dated
November 20, 2012).  Pursuant to the Status (Pretrial Scheduling)
Order ("PTO"), discovery and motion practice in this case is
ended.  ECF No. 50 (Order dated October 29, 2012).

It appears from Fryson's most recent filing that she is
incarcerated in the California state prison system, and is not
represented by counsel.  See ECF No. 74 (Notice of Change of
Address dated October 29, 2013).  Accordingly, the court **VACATES**
the current Status Conference date of December 9, 2013.  the
parties shall instead submit Status Conference statements no
later than December 20, 2013.  In addition to the information
normally required in such reports, the parties shall advise the
court what special procedures, if any, will be needed in light of
defendant's incarceration.

1      All dates and requirements set forth in the PTO are hereby

2 **CONFIRMED**.  If the parties' Final Pretrial Conference statements

3 reflect that both parties are represented by counsel, the Final

4 Pretrial Conference (currently scheduled for January 27, 2014 at

5 2:30 p.m.), will take place with counsel in Chambers, otherwise,

6 the Final Pretrial Conference will be vacated, and the Final

7 Pretrial Order will be based upon the papers.

8      The trial date of April 29, 2014 at 10:30 a.m. in Courtroom

9 No. 4 is hereby **CONFIRMED**.  However, neither surviving party

10 having demanded a jury trial, and the time for doing so having

11 passed, <u>see</u> Fed. R. Civ. P. 38(b)(1), the matter will be tried to

12 the court.

13      IT IS SO ORDERED.

14      DATED:  November 25, 2013.

15

16

17

18                                LAWRENCE K. KARLTON
                                  SENIOR JUDGE
19                                UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28